# United States Court of Appeals for the Federal Circuit

2007-5098


MARTY AVERA and KELLIE AVERA,
parents and next friends of CONNOR AVERA, a minor,

Petitioners-Appellants,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellee.

Robert T. Moxley, Robert T. Moxley, P.C., of Cheyenne, Wyoming, argued for petitioners-appellants.

John T. Battaglia, Deputy Associate Attorney General, Torts Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Mark W. Rogers, Deputy Director, Catharine E. Reeves, Assistant Director, and Julia W. McInerny, Trial Attorney.

Appealed from: United States Court of Federal Claims

Judge Thomas C. Wheeler

# United States Court of Appeals for the Federal Circuit

2007-5098

MARTY AVERA and KELLIE AVERA,
parents and next friends of CONNOR AVERA, a minor,

Petitioners-Appellants,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellee.

Appeal from the United States Court of Federal Claims in 04-VV-1385 before Judge Thomas C. Wheeler.

_____

DECIDED:    February 6, 2008

_____

Before RADER, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

Opinion for the court filed by <u>Circuit Judge</u> DYK. Concurring opinion filed by <u>Circuit Judge</u> RADER.

DYK, <u>Circuit Judge</u>.

This case involves a dispute over the proper calculation and award of attorneys' fees under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 to -34 (2000) ("Vaccine Act"). Appellants Marty and Kellie Avera, as parents and next friends of their son Connor Avera, sought an award of attorneys' fees after unsuccessfully pursuing a vaccine injury claim. They appeal from a decision of the

United States Court of Federal Claims. That decision affirmed a decision by a special master, awarding the appellants fees based on the hometown rates charged in Cheyenne, Wyoming, rather than the rates charged in the District of Columbia and denying appellants' request for interim fees. Avera v. Sec'y of Health & Human Servs., 75 Fed. Cl. 400, 406 (2007). We affirm.

BACKGROUND

On August 26, 2004, Marty and Kellie Avera filed a petition for vaccine injury compensation in the Court of Federal Claims on behalf of their son, Connor. In the petition, the Averas claimed that Connor had suffered an encephalopathy in response to one of a number of vaccines that he received in 2001, and sought damages under the Vaccine Act. The petition included two claims: an encephalopathy table injury claim and a cause-in-fact claim. See Walther v. Sec'y of Health & Human Servs., 485 F.3d 1146, 1149 (Fed. Cir. 2007) (describing table injury claims and cause-in-fact claims). On August 22, 2005, appellants abandoned the encephalopathy table injury claim but stated that they intended to pursue the cause-in-fact claim. On November 23, 2005, after a number of extensions and requests from the special master for the submission of medical reports to substantiate their cause-in-fact claim, appellants explained that they were unable to obtain a validating medical expert opinion and requested that the special master decide the case on the merits based on the current state of the record. In response, the special master concluded in a decision dated December 21, 2005, that, on the record before him, appellants were not entitled to secure compensation under the Vaccine Act. Appellants did not seek review of that decision.

On February 23, 2006, appellants filed an application for an award of attorneys' fees pursuant to 42 U.S.C. § 300aa-15(e)(1). Unlike most fee-shifting statutes, that provision does not include a "prevailing party" requirement, i.e. it does not require that a claimant prevail on the merits in order to secure fees. Instead, even if a claimant does not prevail, section 300aa-15(e)(1) allows for an award if the claim was brought "in good faith" and with "a reasonable basis." In their fee application, appellants initially requested an award of attorneys' fees that reflected the hourly billing rate prevailing in Cheyenne, Wyoming, where appellants' counsel live and work. Attached to the application, an itemized list detailed the number of hours that each attorney had worked on the case and the hourly billing rate of each attorney. Appellants requested $200 per hour for the work of their lead counsel, Robert Moxley, $100 per hour for Julie Hernandez, a law school graduate, for the hours she spent working on the case before she was admitted to the bar, and $130 per hour for Ms. Hernandez for the hours she spent after she was admitted to the bar. Appellants included in the application a sworn declaration of Mr. Moxley, which stated that "[t]he rates that my firm has charged in this case are the same as we charge all other clients for the nature of services rendered." J.A. at 149.

Subsequently, appellants submitted an amended fee petition which in all respects was identical to the first application except that it sought higher hourly billing rates. In the amended petition, appellants argued that, given counsel's long experience practicing in the Vaccine Act Program, the special master should use the substantially higher rates in the so-called Laffey Matrix, utilized by the District of Columbia Circuit for counsel practicing in the District of Columbia in the area of complex litigation. The

amended petition requested $574 to $598 per hour for Mr. Moxley's work, $130 to $136 per hour for Ms. Hernandez's work before she was admitted to the bar, and $240 per hour for work she completed after she was admitted.

The special master awarded fees at the originally requested rates. He rejected the appellants' claim for higher rates using the District of Columbia Laffey Matrix, and held that he was bound to apply the precedent of the Court of Federal Claims, which endorses a "traditional geographic rule" to define an attorney's relevant community. Accordingly, appellants were only entitled to an award of attorneys' fees at the lower Cheyenne, Wyoming rate. Thereafter, appellants filed a motion to vacate the special master's decision. In that motion, appellants repeated their argument that the special master should award fees at the higher District of Columbia rate and, for the first time, asserted that they were entitled to an award of interim fees pending appeal. The special master again rejected appellants' request for an award utilizing the District of Columbia rates, and also rejected their request for interim fees because, in his view, the statute did not allow him to award interim fees.

Appellants sought review in the Court of Federal Claims, which affirmed the special master's award of attorneys' fees and denied the appellants' request for interim fees. The court explained that most parties litigating under the Vaccine Act have only minimal contact with the District of Columbia. It found that, in this case, there were no hearings held in the District of Columbia and that appellants and their counsel did not once travel to the District of Columbia for any purpose. All of the legal services for the Averas were performed in Cheyenne. Under these circumstances, the Court of Federal Claims held that the application of the "forum rule," utilizing the prevailing market rates

in the District of Columbia forum, could not be justified. The court concluded that the applicable market rate "is the community where the attorney maintains an office and practices law." Avera, 75 Fed. Cl. at 405. On the issue of interim fees, the court reasoned that, "[a]s much as the Court would like to authorize interim fee payments . . . where warranted, such relief is not authorized by the Vaccine Act." Id.

Appellants timely filed a notice of appeal. We have jurisdiction pursuant to 42 U.S.C. § 300aa-12(f).

DISCUSSION

Under the Vaccine Act, we review a decision of the special master under the same standard as the Court of Federal Claims and determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa-12(e)(2)(B); Markovich v. Sec'y of Health & Human Servs., 477 F.3d 1353, 1355-56 (Fed. Cir. 2007). Here the resolution of both issues turns on the statutory interpretation of the Vaccine Act, a question of law, which we review without deference. Markovich, 477 F.3d at 1356.

I

The first issue is whether forum rates should be applied to attorneys' fee awards under the Vaccine Act. The special master held that it was bound by the decisions of the Court of Federal Claims to apply a "traditional geographic rule" to determine which locality's market rates it must apply to an award of attorneys' fees. Under that rule, the special master awarded the appellants attorneys' fees that reflected the prevailing market rate in Cheyenne, Wyoming, where appellants' counsel maintain their offices and performed their work. The Court of Federal Claims upheld that decision on appeal.

It stressed that a forum rule is inappropriate for Vaccine Act cases, in which the parties have only minimal contact with the District of Columbia.

Under the Vaccine Act, a special master who has awarded a petitioner "compensation" on a vaccine related claim "shall also award as part of such compensation an amount to cover . . . reasonable attorneys' fees."  42 U.S.C. § 300aa-15(e)(1).[1]  Even if a petitioner is not awarded "compensation," the special master "may award an amount of compensation to cover petitioner's reasonable attorneys' fees . . . if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."[2]  Id.

We have previously endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" under the Vaccine Act.  See Saxton ex rel. Saxton v. Sec'y of Dep't of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

---

[1]  The statute also provides that the Court of Federal Claims on review may award attorneys' fees.  42 U.S.C. § 300aa-15(e)(1).

[2]  Section 300aa-15(e)(1) provides:

(1) In awarding compensation on a petition filed under section 300aa-11 of this title the special master or court shall also award as part of such compensation an amount to cover--

(A) reasonable attorneys' fees, and

(B) other costs,

incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

Using the lodestar approach, a court first determines an initial estimate of a reasonable attorneys' fee by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S. 886, 888 (1984). Once a court makes that initial calculation, it may then make an upward or downward departure to the fee award based on other specific findings. Id. In Blum, the Supreme Court explained that a reasonable hourly rate is "the prevailing market rate," defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. at 896 n.11. As with other fee-shifting statutes, section 300aa-15(e)(1) does not specify the standard for determining which hourly rate a court should apply to the lodestar analysis—that is, whether the reasonable hourly rate to be used in the lodestar calculation is the prevailing market rate of the forum court, as petitioner contends, or the prevailing market rate of the geographic location where the attorney is based, as the government contends. Nor does Blum or any other Supreme Court decision answer that question.

However, the courts of appeals have uniformly concluded that, in general, forum rates should be used to calculate attorneys' fee awards under other fee-shifting statutes. See, e.g., A.R. ex rel. R.V. v. N.Y. City Dep't of Educ., 407 F.3d 65, 79 (2d Cir. 2005) (applying a forum rule to the fee-shifting provision of the Individuals with Disabilities Education Act); Interfaith Cmty. Org. v. Honeywell Int'l, 426 F.3d 694, 705 (3d Cir. 2005) (applying the forum rule to the fee-shifting provision of the Resource Conservation and Recovery Act); Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) ("The relevant market for determining the prevailing rate [under the Civil Rights Attorney's Fees Awards Act of 1976] is ordinarily the community in which

the court where the action is prosecuted sits."); <u>Donnell v. United States</u>, 682 F.2d 240, 251 (D.C. Cir. 1982) (applying the forum rule to the fee-shifting provision of the Voting Rights Act), <u>cert. denied</u>, 459 U.S. 1204 (1983).  We recognize that similar language in the various fee-shifting statutes should be interpreted alike absent some indication to the contrary.  <u>See</u> <u>Indep. Fed'n of Flight Attendants v. Zipes</u>, 491 U.S. 754, 758 n.2 (1989); <u>Sacco v. United States</u>, 452 F.3d 1305, 1310 (Fed. Cir. 2006).[3]  Since all of these statutes use similar language—referring to "reasonable attorneys' fees"—that would suggest that the forum rates should generally apply.  Here, the forum for cases brought pursuant to the Vaccine Act is the District of Columbia, where the Court of Federal Claims, which has exclusive jurisdiction over cases arising under the Vaccine Act, is located.  <u>See</u> 42 U.S.C. § 300aa-12(a).

Nonetheless, the government urges that we adopt a "hometown rule," which dictates that the proper rate to apply is the market rate of the geographic location where the attorney maintains an office and practices law.  Under a hometown rule approach, a court need only consider the geographic location where the attorney is based, without regard to where the services are performed.  The government contends that for Vaccine Act litigation a hometown rule would more accurately reflect each claimant's actual legal costs and would prevent any particular claimant from receiving a windfall.  We disagree.  Under the Vaccine Act, there is no reason to depart from the general rule that a court should apply a forum rate to determine the amount of fees to award a claimant, and the

---

[3]    In <u>Richlin Security Service Co. v. Chertoff</u>, 472 F.3d 1370 (Fed. Cir. 2006), we applied the same principle but found that differences in the "goals and objectives" of the similar fee-shifting statutes required different interpretations.  <u>Id.</u> at 1378, <u>cert. granted</u>, 128 S. Ct. 613 (2007).

government offers no convincing reason why we should do so. We therefore find that, under the Vaccine Act, the same standard applies: to determine an award of attorneys' fees, a court in general should use the forum rate in the lodestar calculation.

But appellants' view that the special master must invariably apply forum rates without exception is equally flawed. In Davis County Solid Waste Management and Energy Recovery Special Service District v. United States Environmental Protection Agency, 169 F.3d 755 (D.C. Cir. 1999), the District of Columbia Circuit recognized a limited exception to the forum rule "where the bulk of [an attorney's] work is done outside the jurisdiction of the court and where there is a very significant difference in compensation favoring D.C." Id. at 758 (emphases in original). Davis arose out of a challenge to regulations promulgated by the Environmental Protection Agency pursuant to its authority under the Clean Air Act. Id. at 756. The case was heard before a court in the District of Columbia, though the challengers were represented by a law firm situated in Salt Lake City, Utah. Id. The court found that the attorneys performed virtually all of their work on the case in Salt Lake City, a much less expensive legal market. Id. at 760. Recognizing a limited exception to the forum rule under these circumstances, the District of Columbia Circuit reasoned, "would prevent the occasional erratic result where the successful petitioner is vastly overcompensated." Id. at 758. The court found that the exception "better reflects the purpose of fee shifting statutes" since it prevents a result that "would produce windfalls inconsistent with congressional intent." Id. at 759-60. No other circuit has rejected Davis.

We think that Davis represents a sound approach to setting the reasonable rate of attorneys' fees in Vaccine Act cases in which the bulk of the work is done outside of

the District of Columbia in a legal market where the prevailing attorneys' rates are substantially lower.

This case is exactly like Davis. There is no question that appellants' attorneys performed the bulk of their work outside of the District of Columbia. Indeed, the record is clear that appellants' attorneys performed all of their work from their law office in Cheyenne, Wyoming. The special master did not conduct a hearing in this case either in the District of Columbia or in Cheyenne, since appellants requested that the special master decide the case on the record before it. As the Court of Federal Claims found and the parties do not dispute, during the merits phase of this case, appellants' counsel never set foot in the District of Columbia.

It is also clear that the market rate prevailing in the District of Columbia is significantly higher than the market rate prevailing in Cheyenne. In Davis, the District of Columbia market rate that the attorneys sought was nearly seventy percent higher than the attorneys' local Salt Lake City rate. Davis, 169 F.3d at 757. In this case, the discrepancy is even more profound. That discrepancy is apparent from a comparison of the original request for attorneys' fees to the amended request for attorneys' fees. In the original request, Mr. Moxley asked for $200 per hour for his work, a rate which he described as being "the same as we charge all other clients for the nature of services rendered." J.A. at 149. In the amended request, Mr. Moxley asked for $598 per hour—nearly three times the originally requested hourly rate.[4] In other words, if we assume from appellants' own requests for attorneys' fees that the prevailing market rate in the

---

[4] Similarly, the amended fee application requested $240 per hour for Ms. Hernandez for the hours she worked after she was admitted to the bar—a rate $110 higher than the originally requested rate and an 84.6% increase.

District of Columbia is nearly three times the prevailing market rate in Cheyenne, we have no trouble concluding that the difference in market rates is significant.

Because the attorneys in this case performed the entirety of their work in Cheyenne, Wyoming, and the District of Columbia rates that they requested are significantly higher than the rates prevailing in Cheyenne, following <u>Davis</u> we hold that the special master did not err in awarding attorneys' fees at the lower Cheyenne rate. We thus have no occasion to determine whether the so-called Laffey Matrix should play any role in the determination of fees under the Vaccine Act in those cases where forum rates are utilized.

II

The second issue is whether the appellants are entitled to an award of interim fees pending appeal. During the pendency of this appeal, we determined that such an award was not appropriate, and we now explain the basis for that decision.

The special master summarily rejected appellants' request for an award of interim fees as "frivolous," since "[t]he statute enacting the Program does not accord the special master the power to award attorney's fees and attorney's costs on an interim basis." J.A. at 33. The Court of Federal Claims similarly held without explanation that it "lack[ed] authority" under the Vaccine Act to grant interim fees and likewise disposed of appellants' request. <u>Avera</u>, 75 Fed. Cl. at 405.

On appeal, the government agreed with the special master and with the Court of Federal Claims, arguing that the statutory text of the Vaccine Act prohibits a special master or court from granting an award of interim fees. The government argued that the Vaccine Act "makes no room for" interim fees. Br. of Resp'-Appellee at 29. The

government argued that an interim award is only permissible after judgment because section 300aa-15(f)(1) provides for "compensation"—which the government argued "includes attorneys' fees"—only when there has been an "elect[ion] to accept or reject" compensation under section 300aa-21(a).[5]  Br. of Resp't-Appellee at 28.  And such an

---

[5]  Subsection 300aa-15(f)(1) provides:

Except as provided in paragraph (2), no compensation may be paid until an election has been made, or has been deemed to have been made, under section 300aa-21(a) of this title to receive compensation.

42 U.S.C. § 300aa-15(f)(1).

Subsection 300aa-21(a) provides:

After judgment has been entered by the United States Court of Federal Claims or, if an appeal is taken under section 300aa-12(f) of this title, after the appellate court's mandate is issued, the petitioner who filed the petition under section 300aa-11 of this title shall file with the clerk of the United States Court of Federal Claims--

(1) if the judgment awarded compensation, an election in writing to receive the compensation or to file a civil action for damages for such injury or death, or

(2) if the judgment did not award compensation, an election in writing to accept the judgment or to file a civil action for damages for such injury or death.

An election shall be filed under this subsection not later than 90 days after the date of the court's final judgment with respect to which the election is to be made. If a person required to file an election with the court under this subsection does not file the election within the time prescribed for filing the election, such person shall be deemed to have filed an election to accept the judgment of the court. If a person elects to receive compensation under a judgment of the court in an action for a vaccine-related injury or death associated with the administration of a vaccine before October 1, 1988, or is deemed to have accepted the judgment of the court in such an action, such person may not bring or maintain a civil action for damages against a vaccine administrator or manufacturer for the vaccine-related injury or death for which the judgment was entered. For limitations on the bringing of civil actions for vaccine-related injuries or deaths associated

election can be made only after the entry of judgment. This interpretation of subsection 300aa-15(f)(1), i.e., that "compensation" includes attorneys' fees, was directly rejected by Saunders v. Secretary of the Department of Health and Human Services, 25 F.3d 1031 (Fed. Cir. 1994).

In Saunders, the Vaccine Act claimant lost on the merits of her cause-in-fact injury claim, and the Court of Federal Claims entered judgment dismissing her petition. Id. at 1032. Instead of accepting the court's judgment against her, the claimant elected to file a civil action for damages pursuant to 42 U.S.C. § 300aa-21(a). Id. The claimant nonetheless filed an application for attorneys' fees pursuant to section 300aa-15(e)(1). Id. at 1033. The government, opposing an award of fees, argued that because the claimant had elected to reject the court's judgment, she was precluded from receiving attorneys' fees. Id. The "linchpin" of the government's argument in Saunders was that the word "compensation" in section 300aa-15(f)(1), which provides for an award of compensation only after an "election," "necessarily encompasses both the payment of attorneys' fees and costs and the payment of an award on the merits under the Program." Id. at 1034. Rejecting the government's argument, we held that the term "compensation" in subsection 300aa-15(f)(1) refers "to payment for the compensatory damages referenced in 42 U.S.C. § 300aa-15(a) to (d), not payment of attorneys' fees and costs." Id. at 1035 (emphasis added). Thus, subsection 300aa-15(f)(1) does not limit the award of attorneys' fees to situations in which an election has been made. The

with the administration of a vaccine after October 1, 1988, see section 300aa-11(a)(2) of this title.

42 U.S.C. § 300aa-21(a).

government's argument that the Vaccine Act limits the award of fees to situations in which an election has been made is therefore incorrect. There is nothing in the Vaccine Act that prohibits the award of interim fees.

The Supreme Court has construed other fee-shifting statutes, which are silent with respect to interim fees, to allow interim fees in appropriate circumstances. In Bradley v. School Board of Richmond, 416 U.S. 696 (1974), the Supreme Court construed section 718 of Title VII of the Emergency School Aid Act, which provided that a "court, in its discretion . . . may allow the prevailing party . . . a reasonable attorney's fee," to allow the award of interim fees and costs. Id. at 709 n.12, 723. "To delay a fee award until the entire litigation is concluded," the Court recognized, "would work substantial hardship on plaintiffs and their counsel, and discourage the institution of actions despite the clear congressional intent to the contrary." Id. at 723. Similarly, in Hanrahan v. Hampton, 446 U.S. 754 (1980), the Supreme Court construed 42 U.S.C. § 1988, which provides for an award of "a reasonable attorney's fee," to allow the award of interim fees. Id. at 757-58. The Supreme Court reaffirmed the availability of an interim fee award in Texas State Teachers Association v. Garland Independent School District, 489 U.S. 782, 790-91 (1989) ("[I]f petitioners' victory . . . had been only an interim one, with other issues remanded for further proceedings in the District Court, petitioners would have been entitled to some fee award for their successful claims under § 1988."). In each of these cases, the Court recognized the propriety of interim awards, even though the statutes only provided for fees to be awarded to a "prevailing

party." Other courts of appeals have consistently granted interim awards under similar fee-shifting statutes.[6]

Again, the principle that similar language in separate fee-shifting statutes should generally be interpreted alike suggests that interim fee awards are permissible under the Vaccine Act. Zipes, 491 U.S. at 758 n.2. Indeed, in vaccine cases there is even more reason to award interim fees because there is no prevailing party requirement. Instead, the Vaccine Act merely requires parties who do not prevail to show that their claim was brought "in good faith" and with "a reasonable basis." 42 U.S.C. § 300aa-15(e)(1). A special master can often determine at an early stage of the proceedings whether a claim was brought in good faith and with a reasonable basis. Moreover, as we noted in Saunders, one of the underlying purposes of the Vaccine Act was to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims. 25 F.3d at 1035. Denying interim fee awards would clearly make it more difficult for claimants to secure competent counsel because delaying payments decreases the effective value of awards. Thus we conclude that the special master and the Court of Federal Claims erred in holding that an interim fee award is not permissible. The statute permits such awards.

Although we find that the special master and the Court of Federal Claims erred in holding that the statute bans interim fee awards, we find that there is no basis for an

---

[6] See Rosenfeld v. United States, 859 F.2d 717, 727 (9th Cir. 1988) (awarding interim fees under the Freedom of Information Act); Parker v. Lewis, 670 F.2d 249, 250 (D.C. Cir. 1981) (awarding interim fees under Title VII of the Civil Rights Act of 1964); Smallwood v. Nat'l Can Co., 583 F.2d 419, 421 (9th Cir. 1978) (same); James v. Stockham Valves & Fittings Co., 559 F.2d 310, 358-59 (5th Cir. 1977) (same), cert. denied, 434 U.S. 1034 (1978); Van Hoomissen v. Xerox Corp., 503 F.2d 1131, 1133 (9th Cir. 1974) (same).

interim fee award here. Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained. In this case, however, appellants only sought interim fees pending appeal, and made no showing that would justify an award of interim fees during that pendency. Appellants have not demonstrated that they have suffered undue hardship. The amount of the fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal. Accordingly, we affirm the judgment (but not the reasoning) of the Court of Federal Claims that held that the petitioner was not entitled to an award of interim fees.

## CONCLUSION

For the foregoing reasons, the decision below is

AFFIRMED.

No costs.

# United States Court of Appeals for the Federal Circuit

2007-5098

MARTY AVERA and KELLIE AVERA,
parents and next friends of CONNOR AVERA, a minor,

Petitioners-Appellants,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellee.

Appeal from the United States Court of Federal Claims in 04-VV-1385 before Judge Thomas C. Wheeler.

RADER, <u>Circuit Judge</u>, concurring.

While I agree with the panel's judgment, I write separately to question the panel's wisdom in jettisoning the Court of Federal Claims' longstanding application of the "hometown rule" approach to attorneys' fees awards under the Vaccine Act.  Rather than referring to other circuits' approaches to fee-shifting statutes (all of which differ significantly from the Vaccine Act fee provisions), I would honor the Court of Federal Claims' established doctrines for fees in vaccine cases.

The panel saw "no convincing reason" to apply the hometown rule to Vaccine Act cases because other statutes apply a forum rule for fee-shifting.  For instance, this court chose to rely on inapposite provisions in the Resource Conservation and Recovery Act, the Civil Rights Attorney's Fees Awards Act, or the Voting Rights Act, and, as in <u>Davis County Solid Waste Management v. United States Environmental Protection Agency</u>, 169 F.3d 755 (D.C. Cir. 1999), the Clean Air Act.  Op. at 8.  These Acts have fee-shifting provisions that are very different from the Vaccine Act and operate in contexts

far removed from the federal claims jurisprudence of the United States Court of Federal Claims. Specifically, under these other statutes, a party must prevail to gain an entitlement to fees. These other cases also feature potential jury trials and other complexities. The Vaccine Act fee provisions feature neither of these important points.

This court hints at those differences when addressing interim fee awards. See Op. at 14-15. Indeed the opportunity for non-prevailing petitioners to recover fees in Vaccine Act cases may provide an additional justification for awarding interim fees. This difference from other fee-shifting statutes, however, cuts against application of a forum rule and in favor of a hometown rule. As the government noted, a petitioner runs very little risk of losing a fee award in Vaccine Act cases. The routine award of fees to non-prevailing petitioners is in harmony with the less adversarial, streamlined process for Vaccine Act claims. In contrast, the other fee-shifting statutes provide different incentives by requiring success to qualify for an award.

Because a vaccine petitioner's attorney will almost always receive fees, this court's rule encourages advocates to attempt to leverage the forum rule to receive DC rates even for work done in Nebraska or Wyoming. The forum will always be Washington, DC in Vaccine Act cases, even where the Special Master assigned to the case holds hearings at some remote location, because the Special Master operates as an extension of the United States Court of Federal Claims. Thus, this court's analysis requires the Court of Federal Claims to undertake a complex Davis exception analysis rather than simply determining the local applicable rates for a reasonable fee award.