BRYSON, Circuit Judge, with whom RADER, Chief Judge, and LOURIE, CLEVENGER, GAJARSA, and PROST, Circuit Judges,
join, dissenting.
The question whether a party who has filed an untimely Vaccine Act petition is entitled to an award of attorneys’ fees under section 15(e)(1) of the Act, 42 U.S.C. § 300aa-15(e)(l), presents a difficult statutory construction issue. While there is no clear path to the answer in the plain language or legislative history of the Vaccine Act, I believe that close attention to the text that Congress chose and consideration of the role of the fee-shifting provision both in the Vaccine Act and in the broader context of federal fee-shifting statutes require that we deny the fee request in this case.
1. In Brice v. Secretary of Health & Human Services, 358 F.3d 865, 869 (Fed.Cir.2004), this court held that the attorneys’ fees provision of the Vaccine Act makes fees available only “in connection with a petition filed under section 300aa-11,” and that a petition dismissed on grounds of untimeliness is not “a petition filed under section 300aa-ll,” as required by section 15(e). Similarly, in Martin v. Secretary of Health & Human Services, 62 F.3d 1403, 1406 (Fed.Cir.1995), the court explained that in order for an attorneys’ fee award to be permitted under section 15(e)(1), “there must first be a judgment ‘on such a petition’ — that is, ‘on a petition filed under section 300aa-ll.’ ” While this court’s en banc decision in Cloer v. Secretary of Health & Human Services, 654 *1365 F.3d 1322 (Fed.Cir.2011), overruled Brice and Martin insofar as they were based on lack of subject matter jurisdiction, see 654 F.3d at 1341 & n. 9, the en banc court did not disavow the analysis of the statutory structure in those cases, and that analysis is still sound. In substance, as modified by the en banc decision in Cloer, Brice and Martin stand for the following principles: (1) section 16(a) of the Vaccine Act directs that “no petition may be filed for compensation under the Program” — and thus under section 11 — after the expiration of the applicable time period, 42 U.S.C. § 300aa-16(a); (2) section 15(e)(1) allows an attorneys’ fee award only when a petition is filed under section 11, id. § 300aa-15(e)(l); and therefore (3) an attorneys’ fee award may be made only if the claimant files a timely petition, either by satisfying the applicable limitations period of section 16 or successfully invoking equitable tolling.[1]
Besides the reference to a petition filed under section 11, section 15(e)(1) provides for an award of attorneys’ fees to an unsuccessful petitioner “if the judgment ... on such a petition does not award compensation.” Although that language, standing alone, could be understood to refer either to a judgment on the merits or to a dismissal for untimeliness, the statutory context indicates that it does not refer to a judgment dismissing the petition for untimeliness. The same language is used in section 21 of the statute, where it clearly refers only to a judgment on the merits. That section provides that if “the judgment did not award compensation,” the petitioner is required to file “an election in writing to accept the judgment or to file a civil action for damages for such injury or death.” 42 U.S.C. § 300aa-21(a)(2). Because the timely filing of a Vaccine Act petition is a prerequisite to filing a civil tort suit, see id. § 300aa-ll(a)(2)(A), a claimant who has filed an untimely petition is not eligible to file a civil action for damages. The requirement in section 21 that a petitioner elect whether to file a civil tort suit when “the judgment did not award compensation” therefore does not refer to a claimant whose petition has been denied as untimely. In light of the meaning given to that phrase in section 21, it is fair to infer that the parallel reference in section 15(e)(1) to a “judgment [that] does not award compensation” likewise denotes a judgment on the merits, not a dismissal.[2]
Finally, section 16(c) of the Act reinforces the view that the phrase “a petition filed under section 300aa-ll” in section 15(e) refers to a timely petition. Section 16(c) provides that if a petition is filed under section 11, state statutes of limita *1366 tions shall be stayed for any civil action brought for the vaccine-related injury, beginning on the date the petition is filed and ending on the date that an election is made under section 21 to file the civil action. 42 U.S.C. § 300aa-16(c). Because, as noted, such a civil action cannot be filed if the petition was untimely, the reference to “a petition filed under section 300aa-ll” in section 16(c) can only mean a petition filed, as section 11 requires, in accordance with section 16, i.e., within the statutory time limits. The same language — “a petition filed under section 300aa-ll” — is used as a prerequisite for the payment of attorneys’ fees and costs in section 15(e), which is a further textual indication that attorneys’ fees and costs are not intended to be paid in cases in which the petition was untimely-
2. Although the legislative history of the Vaccine Act is silent as to the reason for the Act’s highly unusual attorney fee provision, the requirement that there be a timely filed petition and a judgment on the merits of the compensation request, as opposed to a dismissal of the petition for untimeliness, makes sense in light of the development and purposes of the Act.
The Vaccine Act evolved from a series of bills that were introduced over a three-year period. All of the bills that featured compensation proceedings contained attorney fee provisions, and all of them, until the very end of the legislative process, required the claimant to be a prevailing party in order to be eligible for a fee award. See S. 2117 (Nov. 17, 1983); H.R. 5810 (June 7, 1984); H.R. 1780 (Mar. 27, 1985); S. 827 (Apr. 2, 1985). Several of the early proposals would have allowed claimants to elect to proceed either through the compensation program or by way of a civil tort remedy. The bill that was ultimately enacted, however, required that claimants exhaust their remedies through the Vaccine Act compensation program before filing a tort action. H.R. 5546 (Sept. 18, 1986) (incorporated into S. 1744, which became P.L. 99-660, Title III of which is the Vaccine Act). The proposed exhaustion requirement was controversial and sparked strong opposition from those who did not wish to see any impediments placed in the way of plaintiffs’ ability to pursue traditional civil tort remedies. See Vaccine Injury Compensation: Hearing on H.R. 1780, H.R. 4777, and H.R. 5184 Before the H. Subcomm. on Health and the Env’t of the H. Comm, on Energy and Commerce 187, 191, 216 (1986) (statements of Jeffrey H. Schwartz, President, Dissatisfied Parents Together).
It may well be that Congress concluded that because it was imposing an additional burden on claimants, it should make fee awards available to claimants who were required to go through the compensation program even though they were not eager to participate in the program and did not ultimately receive compensation. But since claimants who file untimely petitions do not enter the Vaccine Act compensation program and thus do not face the burden of litigating their entitlement to compensation on the merits, Congress could well have concluded that it did not make sense to provide attorneys’ fees to those parties in connection with their unsuccessful efforts to avoid the limitations period and gain access to the program.
3. In attempting to discern Congress’s purpose in drafting the attorney fee provision at issue in this case, it is important to keep in mind some general principles governing fee-shifting statutes. The background rule applied by American courts is the “American rule,” under which each party pays its own fees. See Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 245, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Some statutes permit or direct a departure from that rule, allowing prevailing parties to obtain an award of attor *1367 neys’ fees from the losing party under certain circumstances. But it is almost unknown in American practice for a statute to provide that the prevailing party will pay the losing party’s attorneys’ fees. The Supreme Court put that point succinctly in Ruckelshaus v. Sierra Club, 463 U.S. 680, 683-84, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), where it noted (emphasis in original):
Our basic point of reference is the “American Rule,” see Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 247 [95 S.Ct. 1612, 44 L.Ed.2d 141] (1975), under which even “the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys’ fee from the loser.” It is clear that generations of American judges, lawyers, and legislators, with this rule as the point of departure would regard it as “quite inappropriate” to award the “loser” an attorney’s fee from the “prevailing litigant.”
The Supreme Court in Ruckelshaus was able to identify only one federal statute that, as of that time, permitted fee awards to a party whose views were rejected. That statute applied not to litigation, but to the promulgation of rules regarding the regulation of hazardous chemical substances. Ruckelshaus, 463 U.S. at 685 n. 7, 103 S.Ct. 3274, citing 15 U.S.C. § 2605(c)(4)(A).
The statute at issue in this case plainly allows losing parties to obtain a fee award from the prevailing party in some circumstances. But because Congress departed from the governing principles applied in virtually every other federal fee-shifting statute, we should be cautious in interpreting the statutory mandate to extend beyond those cases in which fee-shifting was clearly intended. See Robert C. Herd & Co. v. Krawill Mach. Carp., 359 U.S. 297, 304-05, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959) (a rule of law “in derogation of the corn-mon law ... must be strictly construed”); In re Crescent City Estates, 588 F.3d 822, 826 (4th Cir.2009) (“Because fee-shifting statutes are ‘in derogation of the common law,’ courts are obligated to construe them strictly.”).
That is particularly true in light of the practical effect of requiring the government to pay attorneys’ fees to persons who both fail to file a timely petition and then fail in their effort to show that their untimeliness was excused by equitable tolling — which is the only class of persons potentially affected by the resolution of the fee issue before us. Section 15(e)(1) of the Vaccine Act provides that attorneys’ fees can be paid to a petitioner to whom the court does not award compensation “if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.” 42 U.S.C. § 300aa-15(e)(l). As a preliminary matter, it would seem that if Congress had contemplated that claimants making untimely filings should be eligible for attorneys’ fees, it would have required both a reasonable basis for the underlying claim and a reasonable basis for the equitable tolling argument; it seems unlikely that Congress would want to compensate claimants who had a reasonable basis for the underlying claim but no reasonable basis to qualify for equitable tolling. More fundamentally, it seems quite implausible that in a case in which the claimant’s submission was held to be untimely, Congress would have wanted the special master and the court to conduct a collateral proceeding to determine whether, had the claim been eligible for consideration, it would have had a reasonable chance of success. Yet that is the effect of the court’s ruling today.
In a case that has gone to judgment on the merits and the petitioner has lost, it is fairly easy for the special master and the *1368 court to determine whether the petitioner’s position on the merits was reasonable. In that setting, the special master and the court will have the entire record of the case before them to enable them to make that determination. It is an entirely different matter for the special master to have to conduct a sort of shadow trial to determine whether, if the claimant had made a timely filing, the petition would have had a reasonable chance of succeeding. Quite apart from the burden on the special masters and the court, the amount of attorney time (and thus the accumulating fees) that would be consumed by such a proceeding would likely exceed the fees expended on the typically much simpler question whether equitable tolling is available to the claimant. Again, it seems unlikely that Congress envisioned such a scheme, and in the absence of express congressional authorization, we should be cautious about engrafting one onto the statute. Caution is especially warranted in a case authorizing a monetary award against the government in light of well-settled principles of sovereign immunity. The Supreme Court has held that “[except to the extent it has waived its immunity, the Government is immune from claims for attorney’s fees.” Ruckelshaus, 463 U.S. at 685-86, 103 S.Ct. 3274. And the Court has recently reaffirmed that “a waiver of sovereign immunity must be ‘unequivocally expressed’ in statutory text”; that “[a]ny ambiguities in the statutory language are to be construed in favor of immunity”; and that “[ajmbiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the government.” FAA v. Cooper, - U.S. -, 132 S.Ct. 1441, 1448, - L.Ed.2d-(2012).
For these reasons, I respectfully dissent.

. This interpretation of the statute does not, as the majority opinion suggests, create a jurisdictional impasse. Section 12 of the Act gives the Court of Federal Claims and the special masters jurisdiction "over proceedings to determine if a petitioner under section 300aa-l 1 of this title is entitled to compensation.” 42 U.S.C. § 300aa-12(a). That reference gives the Court of Federal Claims and the special masters jurisdiction to determine whether or not the petitioner is eligible under section 16 to file a petition for compensation, even if the petitioner is ultimately determined not to be eligible to file a petition. See Martin, 62 F.3d at 1406.

. The majority finds support for its decision in Avera v. Secretary of Health & Human Services, 515 F.3d 1343 (Fed.Cir.2008), which held that the Vaccine Act permits an award of interim fees to petitioners who are seeking compensation. Avera, however, concerned an interim award for a petitioner who had filed a timely petition and therefore was in position to obtain a judgment on the merits, either awarding or denying compensation. Nothing in Avera suggests that a fee award, whether interim or otherwise, is appropriate for a claimant who has not filed a timely petition. And nothing in this opinion would prohibit granting interim fees to a petitioner who has filed a timely petition and is seeking a compensation award.