# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: March 20, 2020

\* \* \* \* \* \* \* \* \* \* \* \* \*
EVA CRUZ and OMAR LOPEZ     \*
JIMENEZ, *Special Administrators of* \*         UNPUBLISHED
*the Estate of* L.J.L.,                 \*
                                 \*         No. 14-1119V
              Petitioners,     \*
v.                              \*         Special Master Gowen
                                   \*
SECRETARY OF HEALTH       \*         Interim Attorneys' Fees and Costs;
AND HUMAN SERVICES,       \*         Travel Time; Duplicative Billing;
                                   \*         Undocumented Costs; Reductions of
              Respondent.     \*         Expert Rates.
\* \* \* \* \* \* \* \* \* \* \* \* \*

*Karen H. Ross*, Law Office of Karen H. Ross, Henderson, NV, for petitioners.
*Camille M. Collett*, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On February 8, 2020, Eva Cruz and Omar Lopez Jimenez ("petitioners") filed a motion for interim attorneys' fees and costs, which is hereby **GRANTED.** Petitioners are awarded **$73,032.99** in interim attorneys' fees and costs.

### I. Procedural History

Petitioners' minor child L.J.L. ("the baby") was approximately two months old when he received diphtheria-tetanus-acellular pertussis ("DTaP"), inactivated polio virus ("IPV"), haemophilus influenzae b ("Hib"), Prevnar 13, and rotavirus vaccinations on November 19, 2012. The baby was found unresponsive in his crib and pronounced dead on the morning of November 21, 2012. *See generally* Fact Ruling filed June 20, 2018 (ECF No. 91), at 2018 WL 3468742 (Fed. Cl. Spec. Mstr. June 20, 2018).

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), **because this opinion contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

In January 2013, petitioners contacted attorney Karen Ross. Petitioners' Interim Fee Application ("Int. Fee App.") (ECF No. 121) at 5. She met with petitioners and other individuals with knowledge of the events, obtained the medical records, and consulted with several medical professionals. *Id.* at 5-6. On November 18, 2014, petitioners through Ms. Ross timely filed a petition in the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1). The petition alleged that L.J.L. suffered an encephalopathy within the appropriate timeframe after vaccinations listed on the Vaccine Injury Table, thereby constituting a "Table injury". Petition at 3-5, 8; *see also* § 11(c)(1). The alternative allegation was that L.J.L. suffered injuries resulting in death that were caused-in-fact by the vaccines (an "off-Table injury"). Petition at 5-8; *see also* § 13(a)(1)(A). Petitioners filed reports from three different experts.

Respondent recommended against compensation for both the Table and off-Table injury. Respondent's Rule 4(c) Report ("Resp. Rept.") filed February 18, 2015 (ECF No. 10). Respondent filed responsive reports from three different experts. An entitlement hearing was set for May 1-4, 2018. It was initially contemplated that this hearing would take both fact and expert testimony. After several status conferences with counsel addressing multiple aspects of the claim, I determined that the impending hearing would be limited to fact testimony. Afterwards, I would issue binding findings of fact to align the parties and their experts' understanding of the case. *See* Orders (ECF Nos. 69, 74).

A fact hearing was held on May 1, 2018, in Las Vegas, Nevada. Transcript ("Tr.") (ECF No. 89). On June 20, 2018, I issued a ruling on facts (ECF No. 91). I ordered petitioners to file a status report indicating whether they intended to proceed with the case, and if so, file an amended petition. Afterwards, petitioners were granted additional time to determine how they wished to proceed. The case was stayed for unrelated reasons for a period during 2018 – 2019.

On August 27, 2019, petitioners filed an amended petition alleging only that the vaccines were the cause in fact of L.J.L.'s injury and death (ECF No. 111). Petitioners also renewed their motion to compel the Centers for Disease Control and Prevention (the "CDC") to perform certain testing. Respondent opposed the motion. On March 20, 2020, I denied the motion to compel the CDC. Order (ECF No. 124). I directed petitioners to file supplemental expert reports or propose other proceedings within 45 days, by Monday, May 4, 2020. *Id.* at 6.

On February 8, 2020, petitioners filed the instant motion for interim attorneys' fees and costs. Int. Fee App. Petitioners request $53,915.00 in attorneys' fees and $27,542.70[3] in attorneys' costs, totaling $81,457.70 in attorneys' fees and costs incurred to date. Both petitioners signed statements providing that they have not incurred any costs to date in relation to this matter and that Ms. Ross incurred all costs, pursuant to General Order Number 9. *Id.* at 81.

---

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

[3] Petitioners' motion and the itemized invoice request interim attorneys' costs in the amount of $18,742.70. Int. Fee App. at 2, 14. However, this does not include two invoices from Raffi Tachdjian, M.D., which are included in the supporting documentation. *Id.* at 77, 79. Based upon my familiarity with Dr. Tachdjian's involvement and the current stage of the case, I am willing to include consideration of these costs as well.

On February 10, 2020, respondent filed a response (ECF No. 122). Respondent "le[ft] to the discretion of the Special Master to determine whether the statutory requirements for an award have been met in this case, particularly whether there is reasonable basis for the claim." *Id.* at 2. Respondent also "defer[red] to the Special Master to determine whether or not petitioner[s] ha[ve] met the legal standard for an interim fees and costs award as set forth in" *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). *Id.* Respondent did not make any specific objections to reasonable basis, an interim award, or the amounts requested. Petitioners have not filed a reply. This matter is now ripe for adjudication.

## II. Entitlement to Attorneys' Fees and Costs

### A. Legal Standard

The Vaccine Act provides that reasonable attorney's fees and costs "shall be awarded" for a petition that results in compensation. §15(e)(1)(A)-(B). Even when compensation is not awarded, reasonable attorneys' fees and costs "may" be awarded "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for which the claim was brought." § 15(e)(1). The Federal Circuit has reasoned that in formulating this standard, Congress intended "to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012). In light of the lack of specific objections from respondent and my full review of the evidence, I find that this claim was filed with and has maintained good faith and reasonable basis to date.

### B. Interim Awards

The Vaccine Act permits interim attorneys' fees and costs. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008); *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372 (Fed. Cir. 2010). In *Shaw,* the Federal Circuit held that it was proper to grant an interim award when "the claimant establishes that the cost of litigation has imposed an undue hardship." 609 F.3d at 1375. In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. I do not routinely grant interim fee applications. I generally defer ruling on an interim fee application if: the case has been pending for less than 1.5 years (measured from the date of filing); the amount of fees requested is less than $30,000; and/ or the aggregate amount of expert costs is less than $15,000. I generally defer any award of interim attorneys' fees and costs until all of these thresholds are met or until an entitlement hearing has occurred. These are, however, only informal requirements, and there are ultimately many factors bearing on the merit of an interim fee application. I evaluate each one on its own merits.

The present case was filed more than three years ago. Petitioners now request more than $30,000 in attorneys' fees and more than $15,000 in attorneys' costs, which are generally reasonable in light of the complexity of the case and the protracted proceedings to date. Accordingly, I find that an interim fee award is appropriate at this time.

## III.   Reasonable Attorneys' Fees and Costs

### A.  Legal Standard

As stated above, the Vaccine Act only authorizes "reasonable" attorneys' fees and costs. The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-58 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348. Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as to fees. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Special masters have "wide discretion in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). They may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). A line-by-line evaluation of the billing records is not required. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993 (per curiam).

The petitioner "bea[rs] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson*, 24 Cl. Ct. at 484. Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484, n. 1. Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

### B.  Hourly Rates

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, the interim fee decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon an individual's experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates. The Attorneys Forum Hourly Rate Fee Schedules for 2015 – 2020 are made available on the Court's website.[4]

Petitioners request that their attorney Ms. Karen H. Ross receive a rate of $250.00 per hour for all work performed from 2014 – 2020. Int. Fee App. This case appears to be the first case in the Vaccine Program for Ms. Ross. She filed a second case in 2016 which remains pending. Thus, no special master has had the opportunity to consider the reasonableness of the rates sought, or whether Ms. Ross's locale of Henderson, Nevada (which is in the Las Vegas, Nevada metropolitan area) would qualify her to receive in-forum rates for her work. However, based on my experience in reviewing fee applications in the Program and upon consideration of all the facts and circumstances in this case, including Ms. Ross's admission to practice law in the state of Nevada in 2004 and the affidavits from Ms. Ross and another attorney in that locality, I find the rate to be reasonable. Thus, especially in the absence of any specific objection from respondent, I do not find reason or need to further analyze Ms. Ross's requested rates.[5]

## C. Hours Expended

As previously noted, a line-by-line evaluation of the fee application is not required and will not be performed. *Wasson*, 24 Cl. Ct. at 484. Rather, I may rely on my experience to evaluate the reasonableness of hours expended. *Id.* Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests …. [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

Petitioners request compensation for 216.5 hours of work expended in this case up to January 21, 2020. Int. Fee App. at 13. Upon review, a majority of the hours appear to be reasonable. However, there are several issues that merit deductions from the present fee award.

First, within the Vaccine Program, special masters consistently compensate travel time (absent evidence that the attorney was simultaneously performing other work on the case) at one-half of the attorney's hourly rate. *See, e.g.*, *Gilbert v. Sec'y of Health and Human Servs.*, No. 17-35v, 2019 WL 2744855 (Fed. Cl. Spec. Mstr. June 4, 2019); *Bogdan v. Sec'y of Health & Human Servs.*, No. 16-1681v, 2019 WL 1528297 (Fed. Cl. Spec. Mstr. March 19, 2019); *Arevalo v. Sec'y of Health & Human Servs.*, No. 15-406v, 2018 WL 6822350 (Fed. Cl. Spec. Mstr. Nov. 30, 2018). In this case, there are several billing entries for travel billed at the full hourly rate. On April 24, 2014, Ms. Ross entered 1.4 hours for attending a meeting with a medical provider identified in L.J.L.'s medical records, as well as traveling to and from said meeting. Int. Fee

---

[4] United States Court of Federal Claims – OSM Attorneys' Forum Hourly Rate Fee Schedules, available at http://www.cofc.uscourts.gov/node/2914 (last accessed on March 20, 2020).

[5] This does not constitute a finding that Ms. Ross is entitled to forum rates in the Vaccine Program.

App. at 5.  The treating physician practices in the Las Vegas metropolitan area.  Without further information and for purposes of resolving the fee application efficiently, I will estimate that approximately 1.0 of the 1.4 hours billed was for travel.

On April 7, 2018, Ms. Ross entered a total of 8.0 hours to travel to and attend a meeting with petitioners' experts in Los Angeles, California.  Int. Fee App. at 10.  On April 9, 2018, she billed 3.5 hours to travel back from California to Nevada.  *Id.*  A reasonable assumption, supported by the documentation of her air travel, would be that Ms. Ross spent the same amount of time traveling *to* California that she did traveling *back* (3.5 hours).

Similarly, on April 21, 2018, Ms. Ross entered 3.6 hours for travel to California.  Int. Fee App. at 11.  On April 22, 2018, she entered a total of 7.0 hours for both meeting with petitioners' experts and traveling back from California.  *Id.*  I will again assume that she spent the same amount of time on each leg of the trip (3.6 hours).

Finally, on June 16, 2016, a paralegal billing $100.00 per hour entered 1.0 hour to travel to and from the Las Vegas Metropolitan Police Department to retrieve photograph related to the case.  Int. Fee App. at 9.  **This travel time may be compensated at only 50% of the individual's regular hourly rate.  This results in a deduction of $1,950.00 from the fee request.[6]**

As noted above, counsel should "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Hensley v. Eckerhart*, 461 U.S. at 434.  I found two such instances, which will not be compensated.  First, on December 12, 2016, Ms. Ross seems to have billed twice for the same status conference with the Court and respondent's counsel.  Int. Fee App. at 9.  **Disallowing the second, duplicative entry results in a reduction of $375.00.**

Furthermore, in June 2018, Ms. Ross billed for reviewing the fact ruling, which I find reasonable and appropriate.  However, she subsequently billed a further 0.3 hours for review and analysis of the same fact ruling when it was posted on the Court's website approximately one month later, after the deadline for any motion for redactions had passed.  Int. Fee App. at 11.  Repeat billing for review of the identical document is redundant and will not be compensated.  **This results in a reduction of $75.00.**

---

[6] Ms. Ross billed her regular hourly rate of $250.00 per hour for a total of 15.2 hours of travel time, resulting in a total of $3,800.00, 50% of which is $1,900.00.  The paralegal billed $100.00 per hour for 1 hour, resulting in $100.00, 50% of which is $50.00.  $1,900.00 + $50.00 = $1,950.00.

### D. Costs

Like attorneys' fees, costs incurred - by counsel or petitioners themselves - must be reasonable to be reimbursed by the Program. *Perreira*, 27 Fed. Cl. 29, 34. Here, petitioners request $27,542.70 in interim attorneys' costs.[7] These include the costs of obtaining medical records, postage, photocopies, accessing documents in the case, and paying another law firm limited costs associated with establishing an estate for L.J.L. All of those costs are reasonable and adequately documented. So are the costs of Ms. Ross's travel and accommodations associated with meeting petitioners' experts on April 7, 2018. *See* Int. Fee App. at 14, 73-76. However, she has not provided documentation of the requested costs for travel and accommodations associated with meeting with the experts a second time on April 22, 2018. *Id.* at 14. I will not reimburse these requested costs without supporting documentation. **This results in a reduction of $524.71 from the interim fee request.[8]**

Petitioners also request interim costs associated with several medical experts, which merit further discussion. As I have previously communicated to petitioners' counsel, the hourly rates awarded in the Vaccine Program are not as high as the rates billed in some civil cases. "An expert's hourly rate depends on a host of factors including the expert's credentials, his or her experience in the Vaccine Program, and the quality of the work done. To date, special masters have not awarded more than $500/ hour to highly qualified specialists in such fields as neurology, neuro-immunology, pediatrics, immunology, pathology, and rheumatology. This maximum rate is generally reserved for experts who are exceptionally well-qualified, have developed experience in the Vaccine Program, and who have provided thorough and detailed analyses." *See* Order filed May 4, 2018 (ECF No. 86) at 2.

In this case, Ms. Ross paid a $2,000.00 retainer to Marcel Kinsbourne, M.D., a neurologist with decades of experience in the Vaccine Program. Int. Fee App. at 17. The billing entries reflect that Ms. Ross consulted Dr. Kinsbourne before filing the petition. *Id.* at 5. Although petitioners did not file an expert report from Dr. Kinsbourne in this case, his input appears to have been useful to counsel in preparing the petition and is reasonably limited. Dr. Kinsbourne's bill is approved without adjustment.

Petitioners also request a $500.00 expert selection fee paid to American Medical Forensic Specialists ("AMFS") and a further $2,750.00 (representing $550.00 per hour x 5 hours) paid to a pediatric allergist and immunologist, Nathaniel Brady, D.O. *Id.* at 55, 59. It appears that Dr. Brady consulted with Ms. Ross but declined to render an expert report in the case. *Id.* at 8. Dr. Brady's curriculum vitae, included in the interim fee application, reflects that he has reasonable and relevant qualifications. *Id.* at 60-63. However, based on the very limited information available, I find it reasonable to award $1,600.00 for counsel's consultation with Dr. Brady. **This results in a reduction of $1,150.00.**

---

[7] *See* footnote 3 above.

[8] Petitioners will most likely have the opportunity to file a motion for *final* attorneys' fees and costs in the future. At that time, Ms. Ross is permitted to provide documentation of the costs for the travel and accommodations for the second trip in April 2018, and those will be considered.

Petitioners request a $500.00 expert selection fee paid to AMFS and a further $5,225.00 (representing $550.00 per hour x 9.5 hours) billed by Zhongxue Hua, M.D., Ph.D. Int. Fee App. at 51-54. Petitioners request $3,625.00 (representing $500 per hour x 7.25 hours) billed by Roger M. Katz, M.D. *Id.* at 56-57. Finally, they request $8,600.00 (representing $400.00 per hour for 10 hours, and $800.00 per hour for 6 hours) billed by Raffi Tachdjian, M.D., Ph.D. *Id.* at 77, 79. To my knowledge, Drs. Hua, Katz, and Tachdjian have little to no prior experience consulting in the Vaccine Program. All three have submitted expert reports in the case. I am cognizant of the difficulties which petitioners sometimes encounter in retaining qualified medical professionals to opine regarding vaccine causation and I appreciate these medical professionals' participation in this case. However, their reports to date have not fully addressed the issues inherent in petitioners' burden of establishing causation-in-fact under *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). *See e.g.*, Order filed May 4, 2018 at 2. In light of all the facts and circumstances in this case, I find it reasonable to award $400.00 per hour for Drs. Hua, Katz, and Tachdjian's work billed to date. **Accordingly, Dr. Hua's cost to date is reduced by $1,425.00.[9] Dr. Katz's cost is reduced by $725.00.[10] Dr. Tachdjian's cost is reduced by $2,200.00.[11]**

## IV.    Conclusion

In accordance with the foregoing, petitioners' motion for *interim* attorneys' fees and costs is **GRANTED**. Interim attorneys' fees and costs are awarded as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $53,915.00 |
| (50% Rate for Travel Time) | - $1,950.00 |
| (Duplicative Billing Entries) | - $ 450.00 |
| **Attorneys' Fees Awarded** | **$51,515.00** |
| | |
| Attorneys' Costs Requested | $27,542.70 |
| (Undocumented Expenses) | - $ 524.71 |
| (Reductions to Expert Costs) | - $5,500.00 |
| **Attorneys' Fees Awarded** | **$21,517.99** |
| | |
| **Attorneys' Fees and Costs Awarded** | **$73,032.99** |

---

[9] Dr. Hua's bill to date is $5,225.00. He is awarded $400.00 per hour for 9.5 hours, totaling $3,800.00. The difference is $1,425.00.

[10] Dr. Katz's bill to date is $3,625.00. He is awarded $400.00 per hour for 7.25 hours, totaling $2,900.00. The difference is $725.00.

[11] Dr. Tachdjian's bill to date is $8,600.00. He is awarded $400.00 per hour for 16 hours, totaling $6,400.00. The difference is $2,200.00.

Accordingly, the following is awarded:

1) **A lump sum in the amount of $73,032.99 representing reimbursement for *interim* attorneys' fees and costs, in the form of a check payable jointly to petitioners and their counsel Karen H. Ross.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment forthwith.[12]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[12] Entry of judgment is expedited by each party's filing notice renouncing the right to seek review. Vaccine Rule 11(a).