Lisa **WOODS** and Jason **Ford**, as parents and natural guardians of Cason Eugene Ford, a minor, Petitioners,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Respondent.

No. 10–377V.

United States Court of Federal Claims.

June 4, 2012.

Diana Lynn Stadelnikas, Maglio Christopher & Toale, PA, Sarasota, FL, Former Counsel for Petitioners.

Julia Wernett McInerny, Vaccine/Torts Branch, Civil Division, Washington, D.C., for Respondent.

## OPINION

WILLIAMS, Judge.

This vaccine injury case comes before the Court on Respondent's motion for review of an award of interim fees after Petitioners' counsel withdrew from this action due to irreconcilable differences with their clients.

Respondent contests two aspects of the Special Master's fee award—the Special Master's authority to award interim fees where there has been neither a compensation award nor entry of judgment and the Special Master's finding that there was a reasonable basis for Petitioners' claim. Based on recent Federal Circuit precedent, it is clear that the Special Master had the authority to grant interim fees here. The second issue warrants further analysis. The sole predicate for the Special Master's conclusion that the claim had a reasonable basis was the fact that the parties had discussed settlement. In this Court's view, the reasonableness *vel non* of a claim primarily depends upon the claim itself—the adequacy of the factual allegations and medical and legal theories underlying the claim—reasonableness ought not automatically be imputed to a claim by virtue of the fact that its settlement was discussed. As such, the Court upholds the Special Master's determination that she had the authority to award interim fees but remands the matter for further proceedings on whether there was a reasonable basis for Petitioners' claim.

### *Background*

Petitioners Lisa Woods and Jason Ford are the parents of Cason Ford. On October 22, 2009, Cason received immunizations for influenza and the H1N1 virus from his pediatrician. On January 31, 2010, Cason sought treatment at a hospital emergency room for back pain and leg weakness. On February 24, 2010, Cason's neurologist diagnosed him with Guillain–Barré Syndrome ("GBS"), an acute neurologic disorder of the peripheral nervous system.

On June 18, 2010, Petitioners filed a petition under the Vaccine Act on behalf of Cason, claiming that the flu vaccine administered on October 22, 2009, caused Cason's GBS. Petitioners sought "[compensation] for

their losses ... by an award of $250,000 for pain and suffering and payment of any amounts that may be determined to be reimbursed to Medicaid." Petition ¶ 15. Petitioners were represented by Diana L. Stadelnikas and Jennifer Anne Gore Maglio. Petitioners filed hundreds of pages of medical records, including vaccination records and documents that described Cason's treatment for GBS, but the record contains no indication that Petitioners retained any experts. These records were filed in five separate installments, the most recent on May 17, 2011. Respondent has not yet filed her Rule 4(c) report.[1]

Between October, 2009 and October, 2011, activity in the case consisted almost entirely of status conferences and filings of medical records. On May 17, 2011, the Special Master issued an order directing Petitioners to "make a demand on respondent within 30 days," and "attempt to settle the Tennessee Medicaid Lien in this case." This deadline was later extended to August 17, 2011, and the docket indicates that Petitioners ultimately served a settlement demand on Respondent.

Beginning in September, 2011, Petitioners' counsel began having difficulty contacting Petitioners—a situation which subsequently worsened. On October 4, 2011, Petitioners' counsel filed a Motion for Leave to Withdraw and an Application for Attorneys' Fees and Costs. In their Motion for Leave to Withdraw, Petitioners' counsel cited "irreconcilable differences" between themselves and Petitioners, including an inability to reach Petitioners after at least three attempts. On October 5, 2011, the Special Master granted Petitioners' counsel's Motion for Leave to Withdraw. After granting the motion, the Special Master provided Petitioners with a list of attorneys admitted to practice in the Vaccine Program, but they opted to proceed *pro se.*

On December 16, 2011, the Special Master issued a Decision Awarding Interim Attorneys' Fees and Costs to Former Counsel, finding that an award of interim fees was authorized because the petition was brought in good faith and there was a reasonable basis for the claim underlying the petition, citing *Avera v. Secretary of Health & Human Services,* 515 F.3d 1343 (Fed.Cir.2008). The Special Master awarded $15,859.15 to former counsel, reasoning:

> In the instant action, petitioners' case on the merits is continuing unlike the situation in *Avera* in which petitioners' case was dismissed. Here, petitioners' attorney has withdrawn. The issuance of a minor amount of fees facilitates petitioners' attorney, who is a regular practitioner in the vaccine bar, to continue to represent petitioners in this Program. This fulfills the Federal Circuit's concern in *Avera* that a competent bar be readily available to prosecute vaccine claims.
>
> . . . .
>
> The instant action has lasted one and one-half years to date and there is no certain end because petitioners are seeking new counsel and are at present pro se. It is unknowable whether this case will proceed to settlement or be litigated and ultimately decided on entitlement, and if petitioners prevail, on damages. This is justification for an award of interim attorneys' fees and costs at the present time.

*Woods v. Sec'y of Health and Human Servs.,* No. 10–377V, 2011 WL 6957598, at *5–6 (Fed.Cl.Spec.Master. Dec. 16, 2011).

On December 12, 2011, the Special Master held a status conference with pro se Petitioners during which Jason Ford expressed an interest in terminating his involvement with the case. Status Conf. Order, Dec. 13, 2011. Since that time, the Special Master has scheduled two status conferences. Petitioners did not appear for either conference, although Lisa Woods represented to the Special Master that, as of April 9, 2012, she was attempting to retain a new attorney. Since January 25, 2012, the Special Master has

---

1. Under RCFC Vaccine Rule 4(c)(1), Respondent is to file a report "setting forth a full and complete statement of [her] position as to why an award should or should not be granted." Further, Rule 4(c)(2) requires that Respondent's report "contain respondent's medical analysis of petitioner's claims and ... present any legal arguments respondent may have in opposition to the petition."

issued five orders directing Petitioners to contact her or to show cause why their case should not be dismissed for failure to prosecute. The Special Master's most recent order directed Petitioners to contact her by June 4, 2012.

### Discussion

#### Standard of Review

 Jurisdiction lies in this Court pursuant to 42 U.S.C. § 300aa–12(e). In reviewing a decision rendered by a special master, this Court may: (1) uphold the findings of fact and conclusions of law; (2) set aside any of the findings of fact or conclusions of law "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" or (3) "remand the petition to the special master for further action in accordance with the court's direction." 42 U.S.C. § 300aa–12(e)(2)(A)–(C); *see Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1277–78 (Fed.Cir.2005); *Saunders v. Sec'y of Health & Human Servs.*, 25 F.3d 1031, 1033 (Fed.Cir.1994). Findings of fact are reviewed under the "arbitrary and capricious" standard, legal questions are reviewed under the "not in accordance with law" standard, and discretionary rulings are reviewed under the "abuse of discretion" standard. *Saunders*, 25 F.3d at 1033 (quoting *Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n. 10 (Fed.Cir.1992)); *Murphy v. Sec'y of Health & Human Servs.*, 30 Fed.Cl. 60, 61 (1993). In order to find an abuse of discretion, this court must rule that the special master's decision was

> (1) . . . clearly unreasonable, arbitrary, or fanciful; (2) . . . based on an erroneous conclusion of the law; (3) . . . clearly erroneous; or (4) the record contains no evidence on which the . . . [special master] rationally could have based [her] decision.

*Hendler v. United States*, 952 F.2d 1364, 1380 (Fed.Cir.1991) (citation omitted).

#### The Special Master Possessed Authority to Award Interim Fees

 Respondent first argues that the Vaccine Act prohibited the Special Master from awarding fees to former counsel on an interim basis. The Vaccine Act provides:

(e) Attorneys' fees

(1) In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover—

(A) reasonable attorneys' fees, and

(B) other costs,

incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

42 U.S.C. § 300aa–15(e) (2011). Respondent reads this language as permitting fees only where the Special Master or Court has awarded compensation, or where the Special Master or Court has denied compensation and entered judgment. Because the Clerk of the Court of Federal Claims did not enter judgment in this case, Respondent concludes, the Special Master could not have awarded interim fees.

Respondent's argument is foreclosed by Federal Circuit precedent. In *Avera*, the Federal Circuit considered a request for fees after the Court of Federal Claims had entered judgment in favor of respondent and denied the petitioner's request for fees because "appellants only sought interim fees pending appeal, and made no showing that would justify an award of interim fees during that pendency." 515 F.3d at 1352. In *Avera*, the Government argued that the Vaccine Act did not permit an award of interim fees because the Act provides for an award of fees only after an election to accept or reject compensation under Section 300aa–21(a), and such an election can be made only after the entry of judgment. *Id.* at 1351. The Federal Circuit rejected this argument, stating that "[t]here is nothing in the Vaccine Act that prohibits the award of interim fees," and that the Supreme Court had interpreted sim-

ilar fee-shifting statutes to permit such fees. *Id.* at 1351–52. In addition, the Federal Circuit noted:

> [O]ne of the underlying purposes of the Vaccine Act was to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims. Denying interim fee awards would clearly make it more difficult for claimants to secure competent counsel because delaying payments decreases the effective value of awards.

*Id.* at 1351 (citing *Saunders,* 25 F.3d at 1035).

More recently in *Shaw v. Secretary of Health & Human Services,* 609 F.3d 1372 (Fed.Cir.2010), the Federal Circuit expressly reaffirmed its holding in *Avera* that the Vaccine Act permits interim fees and rejected the identical argument that Respondent is reiterating here. The Federal Circuit stated in *Shaw:*

> In *Avera,* we held that the Vaccine Act permits the award of interim fees and costs, rejecting the government's argument that a fee award is only permissible after judgment under § 300aa–15. *Avera,* 515 F.3d at 1350–51. As this court explained, there is even more reason to award interim fees in vaccine cases because there is no prevailing party requirement. *Id.* at 1352.

609 F.3d at 1374–75.

As the court in *McKellar v. Secretary of Health and Human Services,* 101 Fed.Cl. 297, 301 (2011), recognized, "under *Shaw* . . . it is clear that the Act permits interim fees even before an entitlement decision." Respondent's continuing recitation of its argument to the contrary is baseless. Respondent suggests that the allowance of interim fees is limited to situations after the Court has entered judgment, but this gloss contradicts the clear language in *Shaw* rejecting the argument that interim fees may only be awarded after judgment. Further, in *Avera,* the Federal Circuit reasoned that interim fees were permissible in part because "delaying payments decreases the effective value of awards," and "[a] special master can often determine at an early stage of the proceedings whether a claim was brought in good

faith and with a reasonable basis." 515 F.3d at 1352. The *Avera* Court's recognition that the predicate for a fee award can be determined early in the proceedings underscores the notion that interim fees can be awarded before judgment is entered. *See also Cloer v. Sec'y of Health & Human Servs.,* 675 F.3d 1358, 1361–62 (Fed.Cir.2012) (holding that the Vaccine Act permits fee awards in connection with a time-barred claim and citing *Avera* for the proposition that "Congress made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act").

### Requisites For An Award of Interim Fees: Good Faith and Reasonable Basis

Under the Vaccine Act, a special master or the Court of Federal Claims may award fees if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e)(1). Here, Respondent does not challenge Petitioners' good faith, but claims that former counsel has not demonstrated a reasonable basis for Petitioners' claim.

### Reasonable Basis for a Vaccine Act Claim

The sole basis for the Special Master's conclusion that Petitioners had a reasonable basis for their claim was that the parties had at times engaged in settlement negotiations. The Special Master cited no allegations of injury or causation, no medical records, and no legal authority in determining that Petitioners' claim had a reasonable basis. As such, the Special Master erred in failing to sufficiently analyze whether there was a reasonable basis for Petitioners' claim.

■ Settlement negotiations, standing alone, cannot equate to a finding that there was a reasonable basis for Petitioners' claim. *Cf. Pierce v. Underwood,* 487 U.S. 552, 568, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (rejecting an unfavorable settlement agreement as evidence that the Government's position lacked reasonable basis because the settlement's terms, "without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the Government's position" and noting that "to hold otherwise

would not only distort the truth but penalize and thereby discourage useful settlements"); *Cheyenne River Sioux Tribe v. United States*, 806 F.2d 1046, 1050 (Fed.Cir.1986) (noting that the inadmissibility of settlement offers to show liability under the Federal Rules of Evidence "reflects the reality that permitting consideration of settlement offers as reflecting an admission of liability in the amount of the offer would seriously discourage parties from discussing settlement or making settlement offers").

A conclusion that engaging in negotiations in Vaccine Act cases automatically establishes the reasonable basis of a petitioner's claim could create an incentive for respondent to refrain from tendering or entertaining settlement offers, in contravention of sound policy. "The law ... favors settlement of litigation which reduces the burden on courts and counsel and mitigates the antagonism and hostility that protracted litigation leading to judgment may cause." *Cheyenne River Sioux Tribe*, 806 F.2d at 1050. The policy of encouraging settlement is paramount in the context of the Vaccine Act, which Congress designed to "provide for a less-adversarial, expeditious, and informal proceeding for the resolution of petitions." 42 U.S.C. § 300aa–12(d)(2)(A) (2011). A rule equating the occurrence of settlement negotiations with a finding of "reasonable basis" for vaccine claims would thwart this policy by discouraging settlement negotiations.

■ Given that engaging in settlement negotiations does not in and of itself establish the reasonable basis of a claim, the Special Master must analyze the claim to assess reasonableness. The burden is on the petitioner to affirmatively demonstrate a reasonable basis. *McKellar*, 101 Fed.Cl. at 305. Neither the Federal Circuit nor this Court has had occasion to define the meaning of "reasonable basis" for purposes of fee awards under the Vaccine Act. However, the Federal Circuit has ruled that for a claim to have a reasonable basis, it must, at a minimum, be supported by more than "unsupported speculation" by an expert. *Perreira v. Sec'y of Health and Human Servs.*, 33 F.3d 1375, 1377 (Fed.Cir.1994). In *Perreira*, the Federal Circuit upheld a decision that a claim

lacked a reasonable basis because the sole expert opinion purporting to establish causation was "unsupported by either medical literature or studies, and therefore, of no value." *Id.* In so ruling, the Court clarified that once the petitioners reviewed the expert opinion on which their case depended, they no longer had a reasonable basis for claiming causation in fact because the medical opinion was not grounded in medical literature or studies. The Federal Circuit explained:

> Congress must not have intended that every claimant, whether being compensated or not under the Vaccine Act, collect attorney fees and costs by merely having an expert state an unsupported opinion that the vaccine was the cause in-fact of the injury. The words of the statute require more. Attorney fees and costs may be awarded despite losing on the underlying claim if the petition is brought in good faith and there is a reasonable basis for the claim. 42 U.S.C. § 300aa–15(e)(1) (1988). However, when the reasonable basis that may have been sufficient to bring the claim ceases to exist, it cannot be said that the claim is maintained in good faith.

*Id.* at 1377.

■ Similarly, "expert testimony in and of itself does not determine reasonableness" where that testimony is uncorroborated or contradicted by other facts. *Murphy*, 30 Fed.Cl. at 62. According to the docket of the Special Master's proceedings in this case, there has apparently not been any expert testimony in this matter—making the Special Master's task in assessing the reasonable basis of this claim more difficult. However, the Special Master does have the benefit of the petition itself and medical records. *See id.* (finding that petitioners had not shown a reasonable basis for their claims where "medical and other written records contradict[ed] the claims brought forth in the petition"). Further, Respondent has noted that she had yet to file her Rule 4(c) report with her position and medical and legal analysis of the claim. Although not required to do so, the Special Master may request this report to aid in her determination of whether the claim has a reasonable basis.

### The "Circumstances" Necessary for an Interim Fee Award

Respondent also claims that "[u]nder *Avera*, interim fees and costs should only be available if petitioners can affirmatively demonstrate some *extenuating* circumstances to justify the award," and asserts that the Special Master misapplied this standard. Respondent's Memo. in Support of Mot'n for Review at 10. Respondent overstates the burden imposed by *Avera* with regard to establishing the requisite circumstances for awarding interim fees. The court in *Avera* concluded that the petitioners were not entitled to fees because "[t]he amount of the fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal." 515 F.3d at 1352. Along these same lines, in generally discussing the availability of interim fees under the Vaccine Act, the *Shaw* Court stated that "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. However, the Federal Circuit in *Avera* and *Shaw* did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees. *See McKellar*, 101 Fed.Cl. at 301 (recognizing that the *Avera* factors warranting interim fees included but were not limited to "protracted proceedings, costly experts or undue hardship").

 Here, Petitioners' counsel are no longer counsel of record, having been granted leave to withdraw due to irreconcilable differences with their clients. The record suggests that counsel vigorously pursued this claim to the extent they could—up until they became unable to communicate with their clients. While the amount of the fees, $15,859.15, is not substantial, this is the totality of the fees, and there is no reason to force counsel, who have ended their representation, to delay receiving fees indefinitely until the matter is ultimately resolved. The Special Master articulated a valid concern that it was "unknowable" whether the case would be settled, or extensively litigated to the point of determining damages. The Special Master reasonably concluded that delaying a fee award to counsel who had ended their representation for an indeterminable time until the case was resolved sufficed to constitute the type of "circumstances" to warrant an interim fee award. Thus, should the Special Master conclude that there was a reasonable basis for the claim, the circumstances of this litigation would not defeat an interim fee award.

### Conclusion

The Court upholds the Special Master's determinations that a special master may award interim fees under the Vaccine Act and that Petitioners met the requisite "circumstances" for a fee award articulated in *Avera*. However, the Court remands the matter to the Special Master to determine whether Petitioners' claim had a reasonable basis. The Special Master should consider whether Petitioners alleged a claim that had a reasonable basis at the time of filing the petition and, if so, whether the claim continued to have a reasonable basis as the record was developed. *Perreira*, 33 F.3d at 1377.