# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

No. 10-650V

Filed: July 3, 2013

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| SARAH TOOR, | * | TO BE PUBLISHED |
| | * | |
| Petitioner, | * | **Special Master Zane** |
| | * | |
| | * | |
| v. | * | Interim Attorneys' Fees and Costs; |
| | * | Withdrawal of Counsel; Protracted |
| SECRETARY OF HEALTH | * | Proceedings; Undue Hardship; |
| AND HUMAN SERVICES, | * | Reasonable Basis; Proof of Vaccine |
| | * | |
| Respondent. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Peter Meyers,* George Washington University Law School, Washington, DC, for Petitioner.
*Debra Begley*, United States Dep't of Justice, Washington, DC, for Respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

Pending before the special master is Petitioner's Application for Interim Fees and Costs[2] ("P's Interim Fees Application"), to which Respondent objects. As explained below, upon

---

[1]Because this decision contains a reasoned explanation for the special master's action in this case, the special master intends to post it on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, § 205, 44 U.S.C. § 3501 (2006). The decisions of the special master will be made available to the public with the exception of those portions that contain trade secret or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would clearly be an unwarranted invasion of privacy. As provided by Vaccine Rule 18(b), each party has 14 days to file a motion requesting the redaction from this decision of any such alleged material. In the absence of a timely request, which includes a proposed redacted decision, the entire document will be made publicly available. If the special master, upon review of a timely filed motion to redact, agrees that the identified material fits within the categories listed above, the special master shall redact such material from the decision made available to the public. 42 U.S.C. § 300aa-12(d)(4); Vaccine Rule 18(b).

[2]Petitioner's former counsel, for whom fees are sought in this application, is Mr. Ronald Homer, Conway, Homer & Chin-Caplan, PC, Boston, MA.

consideration of the record as a whole, the application is **GRANTED in part and DENIED in part**.

## I. PROCEDURAL BACKGROUND

On September 27, 2010, Sarah Toor ("Petitioner"), *pro se,* through her parents, Paul Toor and Catherine Toor,[3] filed a petition for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §300aa-1, *et seq*., as amended ("Vaccine Act").[4] The Toors alleged that Petitioner suffered from, *inter alia,* chronic fatigue, extreme skeletal and joint pain and fibromyalgia as a result of the influenza ("flu") and human papillomavirus ("HPV") vaccinations she received nearly three years earlier on October 27, 2007. Petition at 1 - 2.

Three months later, on December 27, 2010, Petitioner's former counsel, Mr. Ronald Homer, entered his appearance and began the long and arduous task of collecting and filing outstanding, pertinent medical records. The first set of records was filed in February 2011 and included records from Petitioner's primary care physician.[5]

On December 15, 2011, almost a year after Petitioner's former counsel entered his appearance and after filing approximately 3,500 pages of records, Petitioner filed a status report advising that Petitioner believed all outstanding medical records were filed. In response to Petitioner's notification, on January 4, 2012, Respondent filed a status report advising that she believed certain records remained outstanding. One of the records Respondent claimed was lacking was a record evidencing proof of vaccination. Respondent's January 4, 2012 Status Report. Respondent claimed the proof of vaccination record should contain "the type of vaccination administered, the amount administered, the vaccine lot number, the location in which the vaccination was given, the initials of the administrator, and the date of administration." *Id.*

On January 9, 2012, the special master directed that Petitioner file the remaining outstanding records by February 6, 2012. On February 6, 2012, Petitioner filed a status report and motion for an extension of time advising that Petitioner's former counsel desired to withdraw from the case and asking for additional time so that Petitioner could retain new counsel.

A status conference was conducted on March 14, 2012. At that time, Petitioner's former counsel reiterated his intent to withdraw. Respondent raised the issue of providing additional information regarding proof of vaccination. The indication was that this was simply a matter of tying up a "loose end" regarding the record but that there was not a real dispute as to whether Petitioner had received a vaccination. A further status conference was scheduled at which Petitioner was ordered to appear personally. Order of March 14, 2012.

---

[3] The caption of the original petition was amended on February 2, 2011 to reflect that Petitioner had reached the age of majority and that she became the named party of record.

[4] Part 2 of the Vaccine Act established the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 through § 300aa-34 (2006) ("Vaccine Program").

[5] The case was reassigned to this special master on March 16, 2011.

On April 20, 2012, a status conference was held in which Petitioner, her mother (with the parties' permission), Petitioner's former counsel and Respondent's counsel participated. Petitioner stated that she had no objection to the withdrawal of her former counsel and that she did not object to former counsel being paid fees. Petitioner asked for additional time to find and retain new counsel. Petitioner's former counsel agreed to remain as counsel of record until such time as a new attorney was retained. In the meantime, Petitioner filed her Application for Interim Fees, to which Respondent filed a response. *See infra,* II. On August 30, 2012, Petitioner moved to substitute counsel, which was granted.

## II. PETITIONER'S APPLICATION FOR INTERIM FEES AND COSTS.

On August 23, 2012, Petitioner filed her interim fees application. Petitioner claimed $26,525.23 in fees and $1,479.63 in costs. P's Interim Fees Application.

On October 26, 2012, Respondent filed her response to the Application for Interim Fees ("R's Response"). Respondent objected to Petitioner's application. *Id.* First, Respondent argued that an award of fees is not appropriate because Petitioner did not have a reasonable basis for her claim. R's Response at 1.

Second, Respondent claimed, *inter alia,* that fees should not be awarded on an interim basis. R's Response at 5-6. Respondent further argued that, even if interim fee awards are appropriate in some cases, the circumstances do not warrant the award of interim fees in this case. *Id.*

Third and finally, Respondent argued that even if an award of interim fees is appropriate, the amount requested here is unreasonable. R's Response at 11. Respondent asserted that the hours claimed by Petitioner's former counsel were excessive because he should not have spent so many hours collecting records before resolving the threshold issue of sufficient proof of vaccination. *Id.* In addition, Respondent also argued that the hours claimed are excessive. Respondent identified examples where the hours expended on tasks were, in Respondent's view, excessive. Respondent asked that any interim fee award be reduced. *Id.*

On November 6, 2013, Petitioner filed her reply. ("P's Reply"). Petitioner asserted that there was a reasonable basis for counsel to gather and file records and proceed to the point of withdrawal because (1) the immunization record submitted provided evidence of proof of vaccine; and (2) Petitioner was generally healthy prior to her receipt of the flu and HPV vaccinations and became ill thereafter, which was evidence suggestive of a causal connection. P's Reply. Petitioner also noted that Respondent did not object to her former counsel proceeding with gathering and filing records for almost a year before raising the issue regarding proof of vaccination despite that this was apparent from the time records were filed in February 2011. *Id.* Petitioner asserted that Respondent's argument that interim fees are not appropriate is without merit. *Id.*

Petitioner additionally addressed Respondent's argument that the amount of fees and, particularly, the hours claimed were unreasonable. Petitioner argued that the hours claimed were

not excessive. P's Reply at 15. Petitioner noted that most of the hours were spent by paralegals gathering, reviewing and filing essential medical records. *Id.* at 15-16. Because those medical records totaled more than 3,500 pages, which even Respondent conceded were "voluminous," the time expended was reasonable and necessary. *Id.* Petitioner defended the specific examples of hours Respondent claimed were excessive. *Id.* at 17.

The matter is now ready for decision.

## III.     APPLICABLE LEGAL STANDARDS

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." 42 U.S.C. § 300aa-15(e)(1). This provision permits an award of fees even when a petitioner does not prevail. *Id.* In so doing, this provision ensures the existence of a competent bar willing to represent those potentially injured by vaccinations. *See Saunders v. Sec'y of Health & Human Servs.,* 25 F.3d 1031, 1035-36 (Fed. Cir. 1994) (a secondary purpose of the Vaccine Act, to ensure that vaccine-injury claimants will have readily available a competent bar to prosecute their claims under the Act, is effected by permitting the award of attorneys' fees and costs both to prevailing and non-prevailing claimants).

When compensation is not awarded, reasonable fees can still be awarded as long as it is shown that the petition was filed in good faith and there was a reasonable basis for it. 42 U.S.C. § 300aa-15(e)(1); *Shaw v. Sec'y of Health & Human Servs.,* 609 F.3d 1372, 1375 (Fed. Cir. 2010). Good faith requires only a subjective belief that a vaccine claim exists. A presumption of good faith is afforded petitioners in Vaccine Act cases. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).

The Vaccine Act does not define what constitutes a reasonable basis, but case law provides guidance. In contrast to the subjective standard relating to the good faith requirement, the reasonable basis requirement is "objective, looking not at the likelihood of success of a claim but more to the feasibility of the claim." *McKellar v. Sec'y of Health & Human Servs.,* 101 Fed. Cl. 297, 303 (2011),(citing *DiRoma v. Sec'y of Health & Human Servs.*, No. 90-3277, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)); *see also Perreira v. Sec'y of Health & Human Servs.,* 33 F.3d 1375, 1377 (Fed. Cir. 1994).

As to the timing of an award of fees, the United States Court of Appeals for the Federal Circuit explicitly recognized that the Vaccine Act permits the award of attorneys' fees and costs on an interim basis. *Avera v. Sec'y of Health & Human Servs.,* 515 F.3d 1348, 1352 (Fed. Cir. 2008). Following *Avera*, the Federal Circuit has clarified that an interim fee award may be made prior to a decision on entitlement. *Shaw*, 609 F.3d at 1374-75 ("A special master can often determine at an early stage of the proceedings whether a claim was brought in good faith and with a reasonable basis.") (quoting *Avera,* 515 F.3d at 1352).

In *Avera,* the Federal Circuit provided examples of circumstances where an interim fee award may be appropriate, such as when the case involved protracted legal proceedings, when costly experts had been retained, or when there was undue hardship. *Avera,* 515 F.3d at 1352; *see also McKellar*, 101 Fed. Cl. at 301 ("some special showing is necessary to warrant interim fees, including but not limited to delineated [*Avera*] factors . . . . "); Vaccine Rule 13(b). Since

*Avera*, other cases have clarified that an award of interim fees is in the special master's discretion and that there are various circumstances under which an interim award is appropriate. *See Crutchfield v. Sec'y of Health & Human Serv.,* No. 09-39, 2011 WL 3806351, at *5-7 (Fed. Cl. Spec. Mstr. Aug. 4, 2011) (listing cases). One such instance recognized to constitute an undue hardship is where counsel is withdrawing, and it is anticipated that the proceeding will continue for some time. *Woods v. Sec'y of Health & Human Servs.,* 105 Fed. Cl. 148, 154 (2012).

Once it is established that an award of fees is appropriate, then the appropriate amount of fees, the "reasonable attorneys' fees," must be determined. 42 U.S.C. § 300aa-15. The determination of the amount of reasonable attorneys' fees is also in the special master's discretion. *Shaw,* 609 F.3d at 1377 (citing *Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1520 (Fed. Cir. 1993)). In cases where there is no dispute as to the amount of fees claimed, special masters have awarded a petitioner's counsel the undisputed amount generally. *See e.g., Shaw,* 609 F.3d at 1377.

## IV. DISCUSSION

As explained below, Petitioner has satisfied the requirements for an award of interim fees.

### A. Petitioner Has Acted in Good Faith and Has Established There Was a Reasonable Basis for the Claim During the Period Former Counsel Represented Petitioner.

A review of the record as a whole indicates that the claim was brought in good faith and there was a reasonable basis for it, which existed during the period former counsel represented Petitioner.[6] With regard to good faith, clearly Petitioner had a subjective belief that the vaccination caused her injury. Respondent has not challenged the presumption of good faith here, and the undersigned is satisfied that Petitioner filed this claim earnestly believing that she suffered a vaccine-related injury.

As to reasonable basis, the determination of reasonable basis is ascertained using an objective standard after looking at the totality of the circumstances. *McKellar,* 101 Fed. Cl. at 30. Reasonable basis must exist at each stage of the case. *Perreira,* 33 F.3d at 1377. Additionally, a reasonable basis that was sufficient to bring a claim may cease to exist. *Id.* In that instance, fees may not be awarded for work done after the reasonable basis ceased to exist. *Id.* Here, the relevant time is the period Petitioner's former counsel was counsel of record.[7]

---

[6] The special master concludes that a reasonable basis existed during the period Petitioner's former counsel's was counsel of record. Whether a reasonable basis existed beyond that point and continues to exist to date cannot be decided based on the record at present, and this decision should not be construed as making any such decision.

[7] The claim itself was filed by Petitioner, *pro se.* Attorneys' fees are not payable to *pro se* parties.

Based on review of the record, the special master finds that there was a reasonable basis from the time former counsel began working on the case to the point when he withdrew. Petitioner's former counsel entered his appearance in December 2010. According to Petitioner's claimed hours, Petitioner's former counsel received medical records from Petitioner, including a vaccine record, prior to entering his appearance. P's Interim Fees Application, Tab A, p. 3. Moreover, his client no doubt expressed a good faith belief that there was a causal connection between her injuries and the vaccine. Petitioner's former counsel had a reasonable basis to enter his appearance and to gather records to determine whether those records would substantiate the claim and with the notion that they would then be sent to a potential expert for review. *See generally Hamrick v. Sec'y of Health & Human Servs.,* No. 99-683, 2007 WL 4793152 at *5 (Fed. Cl. Spec. Mstr. Nov. 19, 2007) (given the claim was filed only weeks before the statute of limitations would have expired and records were not all available at the time, the standard to be applied in determining reasonable basis under those circumstances is a relatively low, lenient standard).

Respondent argued that there was not a reasonable basis for former counsel to proceed. R's Response at 9. According to Respondent, there was no reasonable basis because (1) there was not sufficient proof of vaccination, (2) there was evidence that Petitioner's medical condition existed prior to the vaccine and (3) no expert report has been filed. *See generally* R's Response. Each of these will be addressed.

First, as to proof of vaccination, Respondent apparently based her argument on the fact that one particular record indicated that the doctor's progress note, which was located under the heading "Orders," requested that Petitioner be given the flu and HPV vaccines. P's Ex. 3 at 6. *See* R's Response at 9. Respondent argues that such a notation of the doctor's request for a vaccination is insufficient. *Id*.

But, Respondent's argument fails to acknowledge another exhibit which Petitioner filed shortly after her former counsel entered his appearance. Approximately 60 days after entering his appearance, in February 2011, Petitioner's former counsel filed a substantial number of records, including Exhibit 18. Exhibit 18 is a one-page document entitled "Immunization Record." It is a record from Petitioner's pediatrician, Yorba Linda Peds, which designates Petitioner as the patient whose record it is and appears to be a record of all vaccines given to Petitioner by that practice. This record consists of columns that identify the type of vaccination, the dose number of the particular vaccine given, the date of administration and Petitioner's age at the time of vaccination. The record also includes columns for manufacturer, lot number and VIS date, for which no data was entered by the provider. Exhibit 18 indicates that Petitioner was administered the influenza and HPV vaccines on October 27, 2007. Based on Petitioner's former counsel's billing records submitted with the application for interim fees, it appears that Petitioner's former counsel had this record at or near the time he entered his appearance. *See* P's Interim Fees Application, Tab A, p. 3.

Respondent further argued that for Petitioner to satisfy the requirements of proof of vaccination, she must submit a doctor's record that satisfies the requirements under 42 U.S.C. § 300aa-25(a)(1-4). R's Response at 9. Section 25 is in Subpart C of the Vaccine Act, which sets forth the standards for Vaccine Safety, not in Subpart B of the Vaccine Act, the section

6

establishing and governing the Vaccine Program. Nothing in Subpart B, and, in particular, the subsection requiring proof of vaccine, 42 U.S.C. § 300aa-11(a)(1), explicitly mandates that proof of vaccination is satisfied only if a document that includes all the information required under Subsection 25 is submitted. Indeed, Respondent has cited no authority.

In any event, the immunization record submitted, Exhibit 18, includes most of the information that Section 25 of the Vaccine Act requires. It is a medical record that contains some evidence that Petitioner received a vaccine. Although a ruling has not been made as to the adequacy of the proof of vaccination in this case,[8] cases in the program have recognized a variety of records as sufficient to find that a petitioner had been administered a vaccine, including many similar to Exhibit 18. *See e.g., Wonish v. Sec'y of Health & Human Servs.,* No. 90-667, 1991 WL 83959, at *4 (Fed. Cl. Spec. Mstr. May 6, 1991) (finding parental testimony "corroborated strongly by medical records [referring] back to the [vaccination]" to be sufficient to establish vaccine administration); *Lamberti v. Sec'y of Heatlh & Human Servs.,* No. 99-507, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May, 31, 2007) (finding multiple medical record references to vaccine receipt to constitute adequate evidence of administration).

This immunization record was obtained by Petitioner's former counsel at or near the time he entered his appearance. This record certainly provided evidence that Petitioner received the vaccines alleged. Based on this record, former counsel had a reasonable basis to enter his appearance and to gather all the pertinent medical records to see if they substantiated Petitioner's claims.

Respondent also argued that Petitioner's former counsel did not have a reasonable basis because the medical records indicated Petitioner had medical ailments prior to the vaccinations. R's Response at 10. As already noted, the determination of reasonableness must be made by looking to the totality of circumstances at the particular stage of a proceeding. *McKellar,* 101 Fed. Cl. at 303. The records indicated that four months before receiving the vaccines, Petitioner had a physical wherein she was described as being "well developed, well nourished, and in no acute distress." P's Ex. 3, at 9-11. Clearly after the vaccination, she had multiple medical symptoms. This information at the initial stage of the proceeding at least indicates that the vaccine may be a potential cause. The various records provided a reasonable basis to former counsel to gather medical records to determine if those records could substantiate Petitioner's claims or to refer them to a medical expert for review.

Finally, Respondent argued there was not a reasonable basis because Petitioner had not submitted an expert opinion. That an expert report was not filed with the initial claim or during the period Petitioner's former counsel was counsel of record does not mean that the claim did not have a reasonable basis at that stage. *See generally Riley v. Sec'y of Dep't of Health & Human Servs.*, 09-276, 2011 WL 2036976 (Fed. Cl. Apr. 29, 2011) (finding that Petitioners for the most part do not file expert reports with their petitions in the Vaccine Program). Moreover, as

---

[8] At the last status conference, Petitioner's current counsel volunteered to follow-up and seek additional records with the aim toward satisfying Respondent and avoiding litigating the issue of proof of vaccination. Those efforts are ongoing at this point. If the issue cannot be resolved short of litigation, it is anticipated that Petitioner shall file a motion for ruling on the proof of vaccination issue in the near future.

Respondent acknowledged the initial medical records filed included a notation from one of Petitioner's treating physicians who opined that her symptoms might be related to her vaccinations. R's Response at 10 citing P's Ex. 6 at 12. The statute provides that for Petitioner to be entitled to compensation, Petitioner's claim must be substantiated by either medical records or by a medical opinion. 42 U.S.C. § 300aa-13(a)(1). This notation in the medical records at the outset gave some indication that the claim may be substantiated. It certainly provided Petitioner's former counsel with a reasonable basis to continue to proceed in the manner he did while he was counsel of record.

In sum, based on the totality of circumstances here, Petitioner's former counsel had a reasonable basis for entering his appearance, gathering records and investigating Petitioner's claims during the period he was attorney of record. *See generally Perreira,* 33 F.3d at 1377.

## B. An Interim Fee Award Is Appropriate

With regard to a fee award on an interim basis, Respondent contended that an interim fee award[9] is not appropriate prior to an entitlement decision. This argument has been rejected. *Shaw*, 609 F.3d at 1374-75.

Respondent further argued that the circumstances recognized as appropriate for allowance of interim fees are not present. *Avera,* 515 F.3d at 1352. Contrary to Respondent's arguments, at least two of the circumstances recognized in *Avera* as being appropriate for the award of interim fees, *i.e.* protracted proceedings and undue hardship, are present in this case.[10]

### 1. Protracted Proceedings

First, an award of interim fees is appropriate because these proceedings are protracted. These proceedings have been ongoing for over three (3) years. While former counsel did much to move the case forward, at the time he moved to withdraw, the case had progressed only to the point where the filing of expert reports was to be scheduled. A year has passed since Petitioner's former counsel first advised of his intent to withdraw, and the case has not progressed much since his withdrawal. Current counsel has continued to obtain and file even more medical records and seek an expert opinion. Given the limited progress following former counsel's withdrawal, it is anticipated that this case will continue for some time. These proceedings are clearly protracted.

---

[9] Petitioner referred to this award as an award of "final" fees referencing the fact that this would be her final request for fees in connection with her former counsel's work on the matter. P's Reply. But, a request for final fees refers to a request made at or after the case is final. *Avera,* 515 F.3d at 1352. That this may be the final request for fees for the particular counsel does not transform it into a final request for fees because the case remains ongoing. *See generally Avera*, 515 F.3d at 1352; *Bradley v. School Board of Richmond,* 416 U.S. 696, 723 (1974) (interim construed as an award before the entire litigation is concluded).

[10] In *McKellar,* 101 Fed. Cl. at 30, the Court recognized that factors other than those enumerated in *Avera* could be the basis for an award of interim fees.

8

## 2. Undue Hardship

Additionally, there will be a significant undue hardship suffered if Petitioner is forced to wait until Petitioner's claim is resolved before her former counsel is paid his fees. As recognized by the Court, once counsel has withdrawn from a case, there is a hardship that warrants payment of interim fees by virtue of the fact that former counsel (1) is unable to make any future filings, (2) is limited ethically from further participation, (3) may find it difficult to keep apprised of the progress of the case and (4) may not be able to anticipate when he will be paid. *Woods,* 105 Fed. Cl. at 154. As in *Woods,* it is a hardship for Petitioner to have her former counsel not paid for his vigorous and diligent representation for a lengthy period of time following his withdrawal.

The circumstances recognized in *Avera* as justifying an interim fee award--protracted proceedings and undue hardship--are present here. Payment of interim fees is appropriate here.

## C. The Amounts Requested Are, for the Most Part, Reasonable.

Having determined that Petitioner is entitled to an interim fee award, the amount that is reasonable must be determined. To determine this, the special master utilizes the lodestar method in which a reasonable hourly rate is multiplied by a reasonable number of hours. *See generally Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1521 (Fed. Cir. 1993) (approving method). Here, Respondent did not object to the rates claimed, and those rates are found to be reasonable.

As to the hours claimed, the special master can exercise her discretion and reduce the hours to a number that, in her experience and judgment, is reasonable for the work done. *Saxton,* 3 F.3d at 1521; *Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 211 (Fed. Cl. 2009) (a special master is not required to award fees and costs for every hour claimed, but only for those that are reasonable). To determine the number of hours reasonably expended, a court must exclude hours that are "excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983). Special masters may use their experience in Vaccine Act cases to determine whether the hours expended are reasonable. *See Wasson v. Sec'y of Health & Human Servs.,* 24 Cl.Ct. 482, 483 (1991) (noting special masters have broad discretion in calculating fees and costs awards), *aff'd,* 988 F.2d 131 (Fed. Cir .1993). Thus, to determine the reasonableness of numbers of hours claimed, it is necessary to look at the number of hours expended for various tasks and by whom those hours were expended.

Here, for the most part, the hours expended were reasonable. The majority of hours claimed, some 146.3 hours, were for the tasks paralegals performed gathering and filing the records, which exceeded 3,500 pages. It certainly was reasonable to have paralegals, whose time is billed at a lower rate, gather and initially review records.

Petitioner's request for hours expended by attorneys at her former counsel's firm was also, for the most part, reasonable. Petitioner requested compensation for only small amounts of attorneys' time despite that they represented Petitioner for over a year and many hours were

spent gathering and submitting records. Specifically, Petitioner requested payment for 3.2 hours for her former counsel of record, Mr. Homer, 7 hours for another member of Mr. Homer's firm (Ms. Fashano), and 1.9 hours for yet another member of Mr. Homer's firm (Ms. Ciampollilo) for periodic reviews. Petitioner did claim 32.2 hours for another associate attorney of the firm, Ms. Daniels, who oversaw and reviewed the paralegals' work obtaining and gathering records. Respondent did not object to these claimed hours. The hours claimed are reasonable.

Respondent identified four particular tasks and referred to them as examples of instances where an excessive number of hours were claimed. R's Response at 12. Because Respondent had referred to the instances she cited as "examples," in a telephonic status conference on May 15, 2013, the special master requested that Respondent identify each objection to ensure that the special master considered each of Respondent's objections. Respondent's counsel clarified that the items identified as examples were actually the entirety of Respondent's objections. Respondent identified no other instances where she argued the hours claimed were excessive.

The special master has reviewed each of instances to which Respondent objected. With the exception of the specific instances described below, the special master finds that Petitioner's claimed hours are reasonable.

First, Respondent claimed that Petitioner should not have expended resources gathering records prior to submitting a medical record that meets the requirements Respondent claims govern medical records evidencing proof of vaccination. Respondent did not raise this issue until nearly a year after Petitioner's former counsel had been gathering and filing records. Notwithstanding Respondent's delay in raising the issue, as discussed *supra*, IV. A, the evidence shows that within less than 60 days of entering his appearance, Petitioner's former counsel filed Petitioner's Immunization Record. Based on this document, former counsel certainly had a reasonable basis to believe Petitioner received the vaccines claimed. Because he had a reasonable basis to believe Petitioner received the vaccines claimed, it was reasonable for him to continue with the case and expend reasonable hours gathering records.

Second, Respondent objected to a paralegal spending three hours reviewing and summarizing exhibits 2, 4, and 5. R's Response at 12; P's Application for Interim Fees, Tab A at 5 (entry dated 5/17/2011). It is true, as Respondent asserted, that these three sets of medical record exhibits encompassed only 16 pages. But, examination of the billing records identified that the paralegal's time billed was not limited to review of those 16 pages. Rather, the billing entry states the hours are billed for the following: "begin case summary. Rev narrative, stage 1 packet, and exhibits 2, 4, & 5." This entry indicates that there were several other tasks, including reviewing a narrative and beginning a case summary, in addition to just reviewing those exhibits. Considering the hours expended included performing tasks in addition to review of the exhibits, former counsel's claimed three hours is not unreasonable or excessive.

Third, Respondent also objected to the five hours billed for summarizing records on May 18, 2011, as well as the similar entries on May 20, 2011 and May 27, 2011. R's Response at 12. These entries encompassed 15.2 hours of paralegal work for a total of $1,626.40. Review of the entire billing record confirms that overall a paralegal spent a total of 66.5 hours summarizing and reviewing forty (40) exhibits which totaled 3,503 pages of medical records. On average, a

paralegal reviewed 52.6 pages of medical records per hour.[11] In contrast, the billing entries from May to which Respondent objected showed the paralegal reviewed records at about half the average rate, reviewing only about 26 pages per hour.[12] Thus, it took twice as long to review records during this period. Nothing indicated these records were particularly complicated such that they would require twice the amount of time to review as it took to review other records. Accordingly, the total hours billed for summarizing the records on those days in May will be reduced by half to 7.6 hours so as to be consistent with other hours expended on the same reviewing tasks. The total amount awarded shall be reduced by $813.20.

Fourth and finally, Respondent objected to paying the paralegal time expended preparing and serving subpoena requests on January 3, 2011. Respondent argued that it was unreasonable to prepare and issue subpoenas as it had only been three weeks since Petitioner had mailed letters requesting records. Respondent contended that Petitioner should have waited a reasonable amount of time to see if the records would be produced without having to expend resources preparing and serving subpoenas. According to the billing records, a paralegal billed 5.5 hours on December 14, 2010 to draft and mail medical record request letters to 44 different providers. *See* P's Application for Interim Fees, Tab A at 3 (entry dated 12/14/2010). Just three short weeks later, right after counsel entered his appearance, his paralegal billed 6.8 hours to draft and mail subpoenas for outstanding medical records to 43 of those providers. *See id.*, Tab A at 3 (entry dated 1/3/2011). Waiting only three weeks for medical providers to respond to and comply with requests before expending resources to subpoena records from the same providers is unreasonable. Nothing indicates that the issuance of the subpoenas did anything to speed up receipt of the records or resulted in receipt of records that would not otherwise have been received. The award will be reduced by $714.00.

In addition to the foregoing, upon review, the special master identified certain other instances where the hours claimed were excessive. First, Petitioner billed 2.0 hours to draft a status report, which consisted of only one page. P's Interim Fees Application Tab A at 37 (6/21/2012 entry). Review of other billing entries for drafting status reports shows that generally 0.3 to 0.5 hours were billed for this task. *See, e.g.,* P's Interim Fees Application, Tab A at 37 (12/15/2011 and 3/7/2012 entries). It is unreasonable to bill 2.0 hours to draft a status report when in other instances the amount billed for drafting status reports was significantly less. The special master reduces the number of hours in this instance from 2.0 to 0.5 hours.

Second, Petitioner claimed one (1) hour to draft an email to a client. P's Interim Fees Application, Tab A at 37 (7/13/2012 entry). Review of similar billing entries indicated that other emails to clients were generally billed 0.2 hours. *See, e.g.,* P's Application for Interim Fees, Tab A at 36 (4/10/2012 and 4/13/2012 entries). It is unreasonable to bill 1 hour for an email when at other times, counsel billed 0.2 hours for similar tasks. The special master reduces the amount claimed from 1 hour to 0.2 hours.

---

[11] Petitioner asserted that the paralegal averaged approximately fifty-four (54) pages of review and summary of records per one (1) hour. Petitioner's Reply at 16.

[12] The special master calculated a total of 407 pages were reviewed and summarized for the three billing entries being contested.

The total amounts billed for these two items was $627.00. As a result, the special master finds that a small reduction in the number of hours compensated for these tasks is appropriate. The total hours billed for these tasks will be reduced accordingly from three (3) hours to 0.7 hours for a total reduction of $480.70.

In sum, the special master has determined that overall the amounts claimed are reasonable, with the exception of the small number of hours determined to be excessive. The special master concludes that a deduction of $2,007.90 ($813.20 excessive review time, $714.00 premature subpoena issuance, and $480.70 excessive hours to draft status report(s) and emails) is appropriate. Accordingly, the special master shall award interim fees for the remaining amount totaling $24,517.33 ($26,525.32 - $2,007.90).

## V. CONCLUSION

For the reasons explained above, the undersigned finds that an award of interim attorneys' fees and costs to Petitioner is appropriate in this case. The decision shall reflect that Petitioner is awarded attorneys' fees and costs on an interim basis as follows:

**in a check made payable jointly to Petitioner (Sarah Toor) and Petitioner's counsel (Ronald Homer of Conway, Homer & Chin-Caplan, P.C.), the amount of $24,517.33. The interim award check shall be mailed directly to Ronald Homer, Conway, Homer & Chin-Caplan, P.C., 16 Shawmut Street, Boston, MA, 02116.**

**IT IS SO ORDERED.**

s/ Daria Zane
Daria J. Zane
Special Master

12